# In the United States Court of Federal Claims

Nos. 10-647C, 11-100C, and 12-900C
(Filed: April 6, 2016)
**CONSOLIDATED**
NOT FOR PUBLICATION

COLONIAL CHEVROLET CO., INC., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * * * * *

ALLEY'S OF KINGSPORT, INC., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * * * * *

SPITZER MOTOR CITY, INC., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Class Certification; RCFC 23(b); Predominance of Common Questions; Superiority

*Richard D. Faulkner*, Richardson, TX, with whom were *G. Kevin Buchanan*, *Joe Kendall*, *Jody L. Rudman*, and *Harry W. Zanville*, for plaintiffs.

*Kenneth M. Dintzer*, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General.

*Elizabeth M. Hosford*, *James P. Connor*, *David A. Harrington*, *Amelia R. Lister-Sobotkin*, *Joshua A. Mandlebaum*, *Michael A. Rodriguez*, and *Alison S. Vicks*, of counsel.

**ORDER DENYING CLASS CERTIFICATION FOR COLONIAL CHRYSLER PLAINTIFFS**

**FIRESTONE**, *Senior Judge*

Pending before the court is a motion for class certification (ECF No. 66), originally filed on July 16, 2012, by the plaintiffs in Colonial Chevrolet Co., Inc. v. United States (the "Colonial plaintiffs"). The motion seeks class certification for both former owners of dealerships authorized to sell cars manufactured by Chrysler Group, LLC ("Chrysler") and General Motors Co. ("GM"). As explained in the court's scheduling orders (ECF No. 149, filed February 18, 2016, and ECF No. 162, filed March 23, 2016), the court has determined that a decision regarding class certification for the GM plaintiffs should be postponed until the court rules on the government's motion for summary judgment with regard to those plaintiffs. See ECF No. 136. Accordingly, this order deals only with the Colonial Chrysler plaintiffs. As discussed at the March 31, 2016 hearing on the motion, because the Colonial Chrysler plaintiffs have failed to establish that the questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, the motion for class certification by the Colonial Chrysler plaintiffs is **DENIED**.

## I. BACKGROUND

The pending motion arises in the context of the three above-captioned cases involving former owners of dealerships authorized to sell cars manufactured by Chrysler

and GM.[1] As discussed in greater detail in A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1147-49 (Fed. Cir. 2014) and Colonial Chevrolet Co., Inc. v. United States, 123 Fed. Cl. 134, 135-36 (2015), in 2009, as part of the Automotive Industry Financing Program, the government agreed to give $30 billion in loans and equity to GM and $8 billion in loans to Chrysler to prevent the manufacturers from having to liquidate in bankruptcy. As a condition to receiving this financing, Chrysler and GM had to agree to cancel many of their franchise agreements, forcing dealerships to close. Id. at 136. The plaintiffs in the three above-captioned cases argue that the forced cancellation of their franchise agreements constituted a taking without just compensation in violation of the Fifth Amendment. Id.

On July 16, 2012, the plaintiffs in one of the three cases, Colonial Chevrolet Co., Inc. v. United States filed the pending motion for class certification (ECF No. 66). The plaintiffs asked the court to certify a class with the following definition:

> The Class is defined as any person or entity that is a “covered dealership,” under section 747 of the Consolidated Appropriations Act, 2010 (the “Act”), which is defined under the Act as an automobile dealership that had a franchise agreement for the sale and service of vehicles of a brand or brands with a “covered manufacturer” under the Act in effect as of October 3, 2008, and such franchise agreement was terminated, not assigned in the form existing on October 3, 2008 to another “covered manufacturer” in connection with an acquisition of assets related to the manufacture of that vehicle brand or brands, not renewed, or not continued during the period beginning on October 3, 2008, and ending on December 31, 2010.
>
> The class definition excludes a “covered dealership” owned by a “covered manufacturer.”

[1] Some of the plaintiffs in Colonial allege Fifth Amendment takings of GM franchise agreements. The plaintiffs in Spitzer Motor City, Inc. v. United States (Case No. 12-900C) and Alley’s of Kingsport, Inc. v. United States (Case No. 11-100C) only allege takings of Chrysler franchise agreements and have not sought class certification.

Pls.' Mot. 2 (¶ 1.2). As proposed, the class would be divided into two subclasses: (1) a subclass of up to 1,454 "covered dealerships" that had a franchise agreement with GM, and (2) a subclass of up to 789 "covered dealerships" that had a franchise agreement with Chrysler. Id. at 2, 5 (¶¶ 1.3, 2.15). This decision concerns only the proposed subclass of plaintiffs alleging a taking of a Chrysler franchise agreement (the "Colonial Chrysler plaintiffs").

The government filed its response to the Colonial plaintiffs' motion for class certification on August 16, 2012. See ECF No. 75. On September 18, 2012, the court deferred ruling on the Colonial plaintiffs' motion for class certification until after the Federal Circuit resolved the defendant's interlocutory appeal of the court's decision denying its motions to dismiss. See ECF No. 82. On July 18, 2014, following the Federal Circuit's decision in A & D Auto Sales, this court again stayed consideration of the Colonial plaintiffs' motion for class certification until after the government responded to amended complaints in the above-captioned cases. See ECF No. 99.[2]

In the parties' joint status report filed December 1, 2015, the Colonial plaintiffs indicated that they would renew their motion for class certification but noted that "[t]he class certification issue may be moot given certain precedential rules in this area" and that "[g]iven recent precedent, a litigating class may not be viable." ECF No. 134. The Colonial plaintiffs asked the court to defer consideration of their motion for class certification until after the court resolved the merits of these cases. See id. On December

[2] The Federal Circuit held that the plaintiffs' franchise agreements are valid and compensable property interests. See A & D Auto Sales, 748 F.3d at 1153. In September 2015, this court found that the plaintiffs in each of the three above-captioned cases satisfied the pleading requirements necessary to survive the government's motion to dismiss for failure to state a claim. See Colonial Chevrolet, 123 Fed. Cl. at 146.

4, 2015, the court denied the Colonial plaintiffs' request to continue deferring consideration of their motion for class certification. See ECF No. 135. The stay was lifted on February 23, 2016. See ECF No. 151. On March 11, 2016, the Colonial plaintiffs filed a reply identifying recent decisions regarding the standards for class certification. See ECF No. 156. On March 25, 2016, the government filed a supplemental response addressing the authorities cited by the Colonial plaintiffs. See ECF No. 163. The motion was argued at the March 31, 2016 status conference. The court issued its ruling from the bench denying the motion for class certification for the Colonial Chrysler plaintiffs. The court's reasons are now laid out more fully.

## II. LEGAL STANDARDS

Rule 23(a) of the Rules of the United States Court of Federal Claims ("RCFC") provides that—

> One or more members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(b) further states that—

> A class action may be maintained if RCFC 23(a) is satisfied and if: . . . (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; . . . and (D) the likely difficulties in managing a class action.

RCFC 23(c)(5) also provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." See also Sears v. United States, 124 Fed. Cl. 444, 449 (2015) (considering division of a class into subclasses).

Accordingly, a party seeking certification of a class or subclass must establish by a preponderance of the evidence that each of the following five elements is satisfied: (1) numerosity of plaintiffs, (2) commonality of questions of law or fact, (3) typicality of the representative parties' claims, (4) adequacy of the representative parties to fairly represent the class, and (5) superiority of the class action as the fairest and most efficient means of resolving the case. See Bell v. United States, 123 Fed. Cl. 390, 395 (2015) (citing Geneva Rock Prods., Inc. v. United States, 100 Fed. Cl. 778, 782 (2011). "These requirements are in the conjunctive; hence, the failure to satisfy any one of them is fatal to class certification." Jones v. United States, 118 Fed. Cl. 728, 732 (2014) (citations omitted).

In addition, even if the prerequisites of RCFC 23(a) are met, a class action may not be maintained if the putative class does not satisfy the requirements of RCFC 23(b). See id.; see also Jaynes v. United States, 69 Fed. Cl. 450, 456-60 (2006) (addressing the requirements of RCFC 23(b) although the plaintiffs had not established that the proposed class was so numerous that joinder of all members was impracticable). In this regard, the RCFC 23(b) test is "far more demanding." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 624 (1997).

The Supreme Court, in two recent decisions, has established the standards to be applied in determining whether common questions predominate. See Tyson Foods, Inc. v. Bouaphakeo, No. 14-1146, 2016 WL 1092414 (U.S. Mar. 22, 2016); Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013). In Comcast Corp. v. Behrend, the Court held that in

order to establish that common questions of law or fact predominate over individual questions, a party must show "that damages are capable of measurement on a classwide basis." Comcast, 133 S. Ct. at 1433. Otherwise, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." Id. In Tyson Foods, Inc. v. Bouaphakeo, the Supreme Court explained that "the predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, 2016 WL 1092414, at *7.

While class actions are not disfavored in this court, Barnes v. United States, 68 Fed. Cl. 492, 501-02 (2005), they remain "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast, 133 S. Ct. at 1432 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). The court must subject a motion for class certification to "rigorous analysis," which may overlap with consideration of the factual and legal issues in the underlying case. Id. (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-52 (2011)).

## III. DISCUSSION

### A. The Colonial Chrysler Plaintiffs have not Shown that Common Questions Predominate.

For the purposes of this ruling, the court assumes that the prerequisites of RCFC 23(a) can be met in this case. Nonetheless, for the reasons that follow, the court concludes that class certification is not appropriate because the proposed subclass of Colonial Chrysler plaintiffs does not satisfy the elements of RCFC 23(b). Under RCFC 23(b)(3), a party must demonstrate "that the questions of law or fact common to

class members predominate over any questions affecting only individual members."[3]

The Supreme Court has explained that:

> An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'

Tyson Foods, 2016 WL 1092414, at *7 (citing 2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)); see also Jaynes, 69 Fed. Cl. at 457 ("Common issues predominate if the issues that can be resolved by generalized proof 'are more substantial than the issues subject only to individualized proof.'" (citing Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002))).

The Colonial Chrysler plaintiffs acknowledge that under these standards, "[t]he varying situations of the members of the putative class suggest that this may constitute an[] issue regarding class certification." Pls.' Reply 4. However, the plaintiffs suggest that the court could certify the subclass of Colonial Chrysler plaintiffs for the purposes of determining liability only and reserve issues concerning damages for individual determination. Id. (citing In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 860 (6th Cir. 2013)); see also Pls.' Mot. 25 (¶ 4.24, describing discrepancies in compensation amounts as "incidental to the basic question of whether the [putative class members are entitled] to compensation at all" (citing Geneva Rock, 100 Fed. Cl. at 789)).

---

[3] With regard to commonality, the party seeking class certification must also show that "there are questions of law or fact common to the class," RCFC 23(a)(2), and that "the United States has acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(2).

The government argues that under the standards established by the Supreme Court, certification of the Colonial Chrysler plaintiffs subclass is not appropriate because individualized questions related to economic impact and reasonable investment-backed expectations are issues of liability that can be only resolved on a case-by-case basis and thus individual issues predominate. See Def.'s Resp. 21-22; Def.'s Suppl. Resp. 3 (also asserting that plaintiffs have failed to meet the other requirements for establishing commonality and typicality).

The court agrees with the government that the questions of law or fact common to the proposed subclass of Colonial Chrysler plaintiffs do not predominate over questions affecting them as individuals. In this regulatory takings case, the court must consider "(1) 'the character of the governmental action,' (2) 'the extent to which the [action] has interfered with distinct investment-backed expectations,' and (3) '[t]he economic impact of the regulation on the claimant.'" A & D Auto Sales, 748 F.3d at 1151 (citing Penn. Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978)). Thus, liability turns on not only the common factor of demonstrating that the character of the government's action weighs in favor of finding a taking but also the economic impact on each plaintiff and what each plaintiff can show were its reasonable investment-backed expectations. The proof related to the last two factors will vary for each plaintiff because it will turn on the location of the former franchise, their individual economic circumstances, and what they might have reasonably expected at the time they entered into their franchise agreements.

Accordingly, even though there are some common issues in connection with Colonial Chrysler plaintiffs' takings claims, at core, the individualized analysis of

economic issues will control the outcome for each plaintiff. As such, the Colonial Chrysler plaintiffs have failed to establish that common issues predominate.

**B. The Colonial Chrysler Plaintiffs have not Shown that a Class Action is Superior to Other Methods of Adjudicating their Claims.**

In addition to having to show that common issues predominate, the Colonial Chrysler plaintiffs must also establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). Under this element, the court considers the putative class members' interests in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already begun by class members, and the likely difficulties in managing a class action. See RCFC 23(b)(3)(A)-(D). "Essentially, under this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." Barnes, 68 Fed. Cl. at 499 (citations omitted).

The plaintiffs assert that certification of the proposed class and subclasses, with a trial on liability only, is the most efficient way to try this action. See Pls.' Mot. 26 (¶ 4.27). Litigation of individual claims, they state, even in a consolidated action with representative plaintiffs, "simply does not, as a matter of law, bind the non-model plaintiffs under res judicata or collateral estoppel." Id. The plaintiffs argue that a class action would "avoid the risk of inconsistent adjudication of common factual and legal issues" and would be manageable because the putative class members are readily identifiable and must affirmatively opt into the class. Id. at 26-27 (¶¶ 4.27-4.28).

The government argues that there would be no advantage to the Colonial Chrysler plaintiffs proceeding as a class in this case. See Def.'s Resp. 25-27; Def.'s Suppl. Resp. 4. Instead, the government suggests the court should proceed with test cases in which the parties in each of the three separate suits will identify plaintiffs who will best represent the different kinds of plaintiffs in each case. See ECF No. 134 at 6-7 (joint status report filed Dec. 1, 2015). As a practical matter, the government argues, the non-test plaintiffs will be bound by findings on common issues. See id.

The court agrees with the government. First, by virtue of consolidation, the cases are already being coordinated for the purposes of case management, discovery, and trial, without having to select a lead counsel or undertake many of the other tasks needed if a class is certified. Second, the court finds that the parties' acknowledgment that the court's decisions in the test cases on common issues will for all practical purposes be binding in all three cases will also ensure that these cases proceed efficiently. Thus, the court finds that a class action is not a superior way to proceed.[4]

## IV. CONCLUSION

For the reasons above, the Colonial Chrysler plaintiffs' motion for class certification is **DENIED**. Counsel for the Colonial plaintiffs shall have until June 6, 2016 to give notice to the putative Chrysler subclass members not already in this

---

[4] Having concluded that the Colonial Chrysler plaintiffs have failed to establish that common issues predominate or that a class action is the best method for adjudicating the plaintiffs' claims, the court does not reach the additional issues necessary to establish that class certification is appropriate. See, e.g., Bell, 123 Fed. Cl. 390, 402 n.9 (2015) (declining to determine whether proposed class counsel would be adequate under RCFC 23(g)(1) where other class certification elements were not met).

litigation so that, if they desire, they can timely join the litigation in any of the consolidated cases as individual plaintiffs.[5]

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

[5] Because the court concludes that the putative Colonial Chrysler subclass members will have until June 6, 2016 to join the litigation, the government's motion to dismiss the claims of plaintiff Terry Morris Auto Group ("Morris Auto") in Spitzer Motor City, Inc. v. United States (Case No. 12-900C) is **GRANTED**. Morris Auto's claims are **DISMISSED** without prejudice. As discussed at the status conference on March 31, 2016, so long as Morris Auto can show that it was a putative class member, the government will not object to it being added as a party to the Spitzer case.