No. 10-647C
(Judge Firestone)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COLONIAL CHEVROLET CO., INC., et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS ALLEGING TAKINGS OF GENERAL MOTORS DEALERSHIP AGREEMENTS

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

KENNETH M. DINTZER
Deputy Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 616-0385
Kenneth.Dintzer@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ELIZABETH M. HOSFORD
Assistant Director

JAMES P. CONNOR
Senior Trial Counsel

AMELIA R. LISTER-SOBOTKIN
MICHAEL A. RODRIGUEZ
ALISON S. VICKS
Trial Attorneys

May 12, 2016

**TABLE OF CONTENTS**

**PAGE**


INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

I. The Government's Motion For Summary Judgment Is Not Premature ..................3

II. Rule 56(d) Does Not Entitle Plaintiffs To Discovery ............................................6

A. Legal Standards ..........................................................................................6

B. The Court Should Deny Discovery Because The GM Plaintiffs Have Not Met The Requirements For Discovery Under Rule 56(d) and *Theisen Vending* ......................................................................8

1. The GM Plaintiffs Possess The Discovery They Claim Is Necessary To Respond To Our Motion For Summary Judgment ..........................................................................9

2. None Of The Discovery Sought By Plaintiffs Can Create A Genuine Issue Of Material Fact ..................................................10

C. Plaintiffs' Request For "Full Merits Discovery" To Respond To Our Summary Judgment Motion Is Baseless ...........................................15

III. The Court Should Grant The Government's Motion For Summary Judgment Because Plaintiffs' Unpled Duress Allegations Fail As A Matter Of Law .........................................................................................17

A. The Court Lacks Jurisdiction To Invalidate The Wind-Down Agreements ................................................................................17

B. Plaintiffs Forfeited Their Duress Claims By Failing To Plead Those Claims And Failing To Promptly Raise Them............................... 18

C. Plaintiffs' Attacks On The Wind-Down Agreements Fail To Raise A Genuine Issue Of Material Fact ............................................................19

CONCLUSION .....................................................................................................................20

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ....................1

ARGUMENT ....................3

I. The Government's Motion For Summary Judgment Is Not Premature ....................3

II. Rule 56(d) Does Not Entitle Plaintiffs To Discovery ....................6

A. Legal Standards ....................6

B. The Court Should Deny Discovery Because The GM Plaintiffs Have Not Met The Requirements For Discovery Under Rule 56(d) and *Theisen Vending* ....................8

1. The GM Plaintiffs Possess The Discovery They Claim Is Necessary To Respond To Our Motion For Summary Judgment ....................9

2. None Of The Discovery Sought By Plaintiffs Can Create A Genuine Issue Of Material Fact ....................10

C. Plaintiffs' Request For "Full Merits Discovery" To Respond To Our Summary Judgment Motion Is Baseless ....................15

III. The Court Should Grant The Government's Motion For Summary Judgment Because Plaintiffs' Unpled Duress Allegations Fail As A Matter Of Law ....................17

A. The Court Lacks Jurisdiction To Invalidate The Wind-Down Agreements ....................17

B. Plaintiffs Forfeited Their Duress Claims By Failing To Plead Those Claims And Failing To Promptly Raise Them.................... 18

C. Plaintiffs' Attacks On The Wind-Down Agreements Fail To Raise A Genuine Issue Of Material Fact ....................19

CONCLUSION ....................20

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| COLONIAL CHEVROLET CO., INC. et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 10-647C |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS ALLEGING TAKINGS OF GENERAL MOTORS DEALERSHIP AGREEMENTS**

Pursuant to Rules 56 and 7.2 of the Rules of the Court of Federal Claims, defendant, the United States, respectfully submits this reply in support of our motion for summary judgment on the takings claims asserted by former General Motors Company (GM) car dealers.

## INTRODUCTION

In our opening brief, we demonstrated that GM's Wind-Down Agreements entitle the Government to summary judgment for three independent reasons. First, the Wind-Down Agreements disprove the entire premise of the GM plaintiffs' takings claims. Although the GM plaintiffs' core allegation is that the Government "forced" GM to reject plaintiffs' dealership agreements in bankruptcy, there is now no dispute that the vast majority of GM plaintiffs did not have their dealership agreements rejected in bankruptcy. Rather, 59 of the 65 named GM plaintiffs agreed to terminate their dealership agreements through Wind-Down Agreements in exchange for consideration, including a cash payment. Second, the Wind-Down Agreements released the United States from liability relating to the termination of plaintiffs' dealership agreements. Finally, the Wind-Down Agreements undermine the claims of the few GM plaintiffs that did not sign the agreements because the agreements offered these plaintiffs the

very benefits – the opportunity to wind-down their operations – that plaintiffs claim the Government took.

Plaintiffs' response fails to rebut any of these points. Instead, plaintiffs argue that (1) our motion for summary judgment is premature; (2) discovery is necessary to respond to our motion; and (3) the Court should deny the motion because the Wind-Down Agreements are allegedly "of dubious force and effect." Pls. Resp. Br. at 3-8, ECF No. 155-1. Each of these arguments lacks merit. First, our motion is not premature. RCFC 56(b) permits a motion for summary judgment "at any time" and courts grant those motions if a party demonstrates, as we have, that there are no genuine issues of material fact precluding summary judgment. Second, no discovery, let alone "full merits discovery" (as plaintiffs request), is necessary to respond to our motion for summary judgment because the motion is based entirely upon the legal effect of the Wind-Down Agreements on plaintiffs' takings claims. Because plaintiffs do not dispute that Wind-Down Agreements were offered to each plaintiff, *id*. at 7, discovery is neither necessary nor appropriate on that issue. And plaintiffs' suggestion that discovery is needed to determine "who signed the wind down agreements" is unpersuasive. As an initial matter, plaintiffs fail to explain why discovery is needed to determine whether they themselves signed Wind-Down Agreements. We have also identified the 59 named GM plaintiffs that signed Wind-Down Agreements, a fact that plaintiffs do not dispute. *See generally* Pls. Resp. Br.; A1-535 (59 Wind-Down Agreements).[1]

Plaintiffs' suggestion that they were forced to sign Wind-Down Agreements and that the agreements are invalid for duress also does not create a genuine issue of material fact. *Id*. at 22-23. Plaintiffs' amended complaint fails to plead duress, and their opposition to our motion for summary judgment offers no evidence to support their newfound claims. Plaintiffs fail even to

[1] "A__" refers to the page number of the appendix filed concurrently with this reply brief.

identify the party that allegedly forced plaintiffs to sign Wind-Down Agreements. Nor do plaintiffs explain how any supposed duress can change the fact that the vast majority of the GM plaintiffs' dealership agreements were not rejected in bankruptcy, as plaintiffs contend in their complaint. Plaintiffs' attempt to use their unpled duress allegations to manufacture a genuine issue of material fact fails because plaintiffs must "proffer countering evidence sufficient to create a genuine factual dispute" to avoid summary judgment. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). Plaintiffs have failed to do so. Indeed, plaintiffs forfeited any duress claim by failing to plead it and by not asserting duress until seven years after the Wind-Down Agreements were signed. In any event, the Court lacks jurisdiction to invalidate the Wind-Down Agreements, as they are agreements between private parties – GM and the plaintiffs – and the bankruptcy court has already ruled that the Wind-Down Agreements are valid and were not executed under duress.

Ultimately, no amount of discovery can change the fact that (1) the vast majority of the GM plaintiffs agreed to the termination of their dealership agreement and released the United States from claims arising out of those terminations, and (2) every plaintiff was offered the benefits they now claim the Government confiscated from them – the opportunity to wind-down their operations. As a result, the GM plaintiffs' takings claims fail as a matter of law and the Court should grant summary judgment in favor of the Government.

## ARGUMENT

### I. The Government's Motion For Summary Judgment Is Not Premature

In their response brief, plaintiffs first argue that the Government's motion for summary judgment "is improper because it is premature." Pls. Resp. Br. at 8-9. Plaintiffs are incorrect; RCFC 56 provides that a party may move for summary judgment "at any time until 30 days after

the close of all discovery," and courts often grant summary judgment before discovery is undertaken. RCFC 56(b); *see, e.g.*, *T & M Distributors, Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (affirming grant of summary judgment prior to discovery where plaintiff failed to raise any genuine issue of material fact); *Theisen Vending Co. v. United States*, 58 Fed. Cl. 194, 198 (2003) (granting motion for summary judgment in a takings case prior to discovery and establishing a five-part test to determine whether discovery is necessary to respond to the summary judgment motion); *Chevron U.S.A. Inc. v. United States*, 72 Fed. Cl. 817, 819 (2006) (denying plaintiffs' motion for discovery in response to a motion for summary judgment filed before discovery); *Raymond v. United States Capitol Police Bd.*, 157 F. Supp. 2d 50, 55 (D.D.C. 2001) (pre-discovery motion for summary judgment appropriate where plaintiff fails to present a genuine issues of material fact); *U.S. Through Small Bus. Admin. v. Light*, 766 F.2d 394, 397 (8th Cir. 1985) (Rule 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment."); *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 845 (11th Cir. 1989) (same); *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993) (same).

In their opposition, plaintiffs ignore RCFC 56(d), the rule that governs whether a summary judgment motion is premature. *See* Pls. Resp. Br. at 8-9; RCFC 56(d). Indeed, Rule 56(d) "specifically addresses the question of summary judgment before discovery has taken place." *Reflectone*, 862 F.2d at 843 (discussing Fed. R. Civ. P. 56(f), the predecessor of Fed. R. Civ. P. 56(d), which is identical to RCFC 56(d)); *see also* Fed. R. Civ. Pr. 56 advisory committee's note (2010 amendment) ("[Rule 56] (d) carries forward without substantial change the provisions of former subdivision (f)."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 ("Any potential problem with such premature motions can be adequately dealt with under Rule 56(f).").

Instead of addressing RCFC 56(d), plaintiffs misapply precedent from the United States Court of Appeals for the Federal Circuit in arguing that discovery is always necessary before the Court can resolve a summary judgment motion. Pls. Resp. Br. at 8-9, ECF No. 155-1 (citing *Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1336-37 (Fed. Cir. 2008); *Dunkin' Donuts of Am., Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917 (Fed. Cir. 1988)). Neither *Metropolitan Life* nor *Dunkin' Donuts* supports the inflexible rule advocated by plaintiffs. In *Metropolitan Life*, a patent case, the Federal Circuit held that the district court erred in denying plaintiff-appellant discovery needed to respond to a summary judgment motion. 527 F.3d at 1332. The Federal Circuit's reasoning undermines the GM plaintiffs' suggestion that summary judgment is never appropriate before discovery has occurred. The Federal Circuit reversed the district court's denial of discovery because "the district court provided no explanation for why it did not allow any period for discovery." *Id*. at 1337. Here, in our opening brief and again below, we demonstrate why the plain terms of the Wind-Down Agreements defeat plaintiffs' claims as a matter of law, rendering fact discovery unnecessary. *See Florsheim Shoe Co., Div. of Interco v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) ("factual discovery is not necessary or appropriate" for questions of law); *Stathis v. United States*, 120 Fed. Cl. 552, 559 (2015) ("Questions of law are particularly appropriate for summary judgment.").

Plaintiffs fare no better with their reliance on the Federal Circuit's *Dunkin' Donuts* decision. In that case, the Federal Circuit vacated the United States Patent Trial and Appeals Board's grant of summary judgment because appellant had (1) complied with requirements of then-Fed. R. Civ. P. 56(f), now Fed. R. Civ. P. 56(d); and (2) established genuine issues of material fact that precluded summary judgment. *Dunkin' Donuts*, 840 F.2d at 919. The GM plaintiffs have done neither. Moreover, the *Dunkin' Donuts* opinion cites the Supreme Court's

*Celotex* decision, which reiterates that courts apply Rule 56(f) – now Rule 56(d) – to determine whether a party needs discovery to respond to a motion for summary judgment. *Celotex Corp.*, 477 U.S. at 326. The other cases cited by the GM plaintiffs, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) and *Resolution Trust Corp. v. N. Bridge Assocs.*, 22 F.3d 1198 (1st Cir. 1994), also do not support their argument that the Court should reject the Government's motion as premature. Contrary to plaintiffs' approach, both cases invoke Rule 56(d)'s predecessor to address whether discovery is necessary to respond to a summary judgment motion. *Anderson*, 477 U.S. at 251, n.5; *Resolution Trust*, 22 F.3d at 1204-1209.

The Court should reject plaintiffs' attempt to bypass RCFC 56(d)'s requirements. Similarly, the Court should decline plaintiffs' invitation to create a bright-line rule that courts may not resolve a summary judgment motion before discovery is undertaken. The Government's motion for summary judgment is supported by RCFC 56(b) and by well-established precedent obligating plaintiffs to first satisfy Rule 56(d) to obtain discovery in response to a summary judgment motion. *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144-45 (Fed. Cir. 1996). Accordingly, the Government's motion for summary judgment is not premature.

## II. <u>Rule 56(d) Does Not Entitle Plaintiffs To Discovery</u>

Plaintiffs, citing Rule 56(d), argue that they require discovery before responding to our motion for summary judgment. Pls. Resp. Br. at 14-19. The Court should deny plaintiffs' request for discovery because plaintiffs cannot satisfy the five prerequisites for obtaining relief under Rule 56(d).

### A. <u>Legal Standards</u>

RCFC 56(d) governs requests to take discovery when opposing a motion for summary judgment. Although courts liberally grant requests for discovery under Rule 56(d), the party

seeking discovery must meet the rule's "strict qualifications." *Alta Wind I Owner-Lessor C v. United States*, 117 Fed. Cl. 369, 372 (2014). The requesting party must proffer "specified reasons," supported by affidavit or declaration, to demonstrate that discovery is "essential" to the party's summary judgment opposition. RCFC 56(d); *Simmons Oil Corp.*, 86 F.3d at 1144 (party seeking discovery must "state with some precision the materials [it] hope[s] to obtain with further discovery, and exactly how [it] expect[s] those materials would help [ ] in opposing summary judgment."). In the absence of such specificity, courts should deny requests for discovery because they would result in unnecessary expense and waste judicial resources. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed. Cir. 1984).

This Court has established a "five-part set of prerequisites" for obtaining discovery or other relief under RCFC 56(d). The party requesting discovery must: (1) specify the particular factual discovery sought; (2) explain how facts obtained in discovery are reasonably expected to engender a genuine issue of material fact; (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue; (4) recite the efforts previously made to obtain those facts; and (5) show good grounds for the failure to have discovered the essential facts sooner. *Theisen Vending*, 58 Fed. Cl. at 198; *see also Clear Creek Cmty. Servs. Dist. v. United States*, 100 Fed. Cl. 78, 83 (2011) (applying the *Theisen Vending* test); *Chevron U.S.A.*, 72 Fed. Cl. at 819 (same). If plaintiffs fail to satisfy all five prerequisites, a motion for relief under Rule 56(d) fails. *Id.*; *Alta Wind*, 117 Fed. Cl. at 372. If the prerequisites are met, they create a presumption in favor of relief under RCFC 56(d), but "should not impair the salutary, generous purposes of [Rule 56]." *Theisen Vending*, 58 Fed. Cl. at 198 (citations omitted); *Sweats Fashions*, 833 F.2d at 1562 ("summary judgment is a salutary method

of disposition designed to secure the just, speedy and inexpensive determination of every action.") (citations and internal quotation marks omitted).

### B. The Court Should Deny Discovery Because The GM Plaintiffs Have Not Met The Requirements For Discovery Under Rule 56(d) and *Theisen Vending*

The GM plaintiffs fall well short of meeting RCFC 56(d)'s requirements. *See Theisen Vending*, 58 Fed. Cl. at 198. First, RCFC 56(d) requires that plaintiffs identify the factual discovery sought. *Id.* Although plaintiffs offer a list of 21 topics for which they seek discovery, many of the topics identified by plaintiffs do not seek factual discovery; rather, they are merely conclusory assertions. *See, e.g.*, Pls. Resp. Br. at 17, Topic No. 17 ("How there was misrepresentation of fraud in the inducement."); Topic No. 18 ("Whether the releases are void, invalid, or otherwise ineffective for any reason based on the facts and circumstances."); Topic No. 15 ("How, if at all, do the releases apply to this takings case."); Topic No. 16 ("How the circumstances of the wind down agreements and releases constitute duress."). Plaintiffs' unsupported legal arguments do not establish entitlement to discovery under RCFC 56(d). *See* RCFC 56(d) (requiring plaintiff to show that it requires discovery to "present facts essential to justify its opposition.") (emphasis added); *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989) ("If all one had to do to obtain a grant of a Rule [56(d)] motion were to allege possession by movant of 'certain information' and 'other evidence,' every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files."); *T & M Distributors, Inc.*, 185 F.3d at 1285 (plaintiff "cannot defeat summary judgment and obtain discovery with just bald assertion and speculation of wrongful conduct."); *Simmons Oil*, 86 F.3d at 1144 ("It is not enough simply to assert [ ] that 'something will turn up.'").

Even if plaintiffs had identified the factual discovery they sought, meeting this first *Theisen Vending* requirement does not to justify discovery under RCFC 56(d). *Theisen Vending*,

58 Fed. Cl. at 199-200 (denying discovery under RCFC 56(d) in a takings case even though plaintiffs "identified specifically the discovery it seeks"); *Paalan v. United States*, 57 Fed. Cl. 15, 17 (2003) (denying motion for discovery under Rule 56(d) when plaintiff identified 18 areas of requested factual discovery). Plaintiffs must also meet the other four requirements of *Theisen Vending*, which can be grouped in two categories: (1) plaintiffs must not already possess the discovery (addressing the fourth and fifth *Theisen Vending* requirements), and (2) the discovery sought must be likely to create a genuine issue of material fact (addressing the second and third *Thisen Vending* requirements). Plaintiffs do neither.

**1. The GM Plaintiffs Possess The Discovery They Claim Is Necessary To Respond To Our Motion For Summary Judgment**

Plaintiffs fail to explain why the facts they hope to find in discovery are not already available to them. This is critical, as the discovery that the GM plaintiffs seek already is – or should be – in their possession, and the GM plaintiffs have provided no explanation for why they have neglected to gather this information. *See Theisen Vending*, 58 Fed. Cl. at 198 (addressing fourth and fifth requirements that party seeking discovery under RCFC 56(d) must recite the efforts previously made to obtain facts and show good grounds for the failure to have discovered the essential facts sooner).

For example, the GM plaintiffs criticize the Government for failing to attach the executed Wind-Down Agreements to our motion. Pls. Resp. Br. at 21 ("The Defendant claims 59 GM plaintiffs signed them. Yet it does not provide any such proof. That alone represents a genuine issue of material fact."). But plaintiffs themselves signed these agreements and they do not explain why the agreements are not in their possession. In any event, we have included the 59 agreements in the appendix filed concurrently with this brief. *See* ECF No. 181, Def. App. to Repl. Br., A1-535 (May 12, 2016). The GM plaintiffs also cannot justify discovery of the

following information, all of which should already be in their possession: (1) information about which GM plaintiffs sought arbitration; (2) information about which GM plaintiffs challenged GM's decision to provide a Wind-Down Agreement; (3) the results of arbitration for the GM dealers; (4) information about who operated the GM plaintiffs' dealerships, and in what capacity, during the wind-down period; (5) information about which GM plaintiffs were compensated pursuant to the Wind-Down Agreements and in what amount; (6) details of the GM plaintiffs' negotiation process regarding the Wind-Down Agreements; (7) information about whether any GM plaintiffs modified the release language in the Wind-Down Agreements; and (8) what disclosures were made to GM plaintiffs to gain the releases that were signed. Pls. Resp. Br. at 16-17.

Because all of these facts can be obtained by the GM plaintiffs without discovery, they do not provide a basis for relief under RCFC 56(d). *See Theisen Vending*, 58 Fed. Cl. at 199 (denying motion for discovery under RCFC 56(d) because plaintiff could have obtained discovery from other sources). Indeed, plaintiffs have not explained what efforts they have undertaken to obtain these facts, nor shown any basis for their failure to do so, both of which are required to justify RCFC 56(d) discovery under the *Theisen Vending* test. 58 Fed. Cl. at 198. Accordingly, the Court should deny plaintiffs' request for discovery under RCFC 56(d) regarding facts that are or should be in the GM plaintiffs' possession.

### 2. None Of The Discovery Sought By Plaintiffs Can Create A Genuine Issue Of Material Fact

The *Theisen Vending* test requires plaintiffs pursuing RCFC 56(d) discovery to (1) explain how the facts they seek through discovery will create a genuine issue of material fact, and (2) establish "an adequate factual predicate for the belief" that those facts exist. *Theisen Vending*, 58 Fed. Cl. at 198 (describing second and third requirements for relief under RCFC

56(d)); *see also Simmons Oil*, 86 F.3d at 1144. "Speculative hope" is not enough; plaintiffs must state "with some precision" how the facts sought will allow them to oppose the pending motion for summary judgment. *Id.*; *Pure Gold, Inc.*, 739 F.2d at 627. The GM plaintiffs cannot satisfy these burdens because the facts they seek cannot create genuine issues of material fact.[2]

For example, plaintiffs repeatedly argue that the Court should allow discovery regarding the arbitration process that followed the termination of the GM dealership agreements. Pls. Resp. Br. at 12-13, 16-17. The arbitration proceedings, however, are wholly irrelevant to our motion for summary judgment and thus cannot raise a genuine issue of material fact. *Anderson*, 477 at 248 ("[f]actual disputes that are irrelevant or unnecessary will not be counted"). Our motion is based upon the undisputed facts that: (1) every GM plaintiff was offered a Wind-Down Agreement; and (2) 59 of the 65 GM plaintiffs signed Wind-Down Agreements. Whether any terminated GM dealer later sought arbitration (and the results of that arbitration) cannot create a genuine issue of material fact because the GM dealers that signed Wind-Down Agreements released the United States from liability and agreed to terminate their own dealership agreements, thus precluding their takings claim under well-settled authority. A5-6; *Norman v. United States*, 429 F.3d 1081, 1089 (Fed. Cir. 2005) (property cannot be taken by agreement); *BMR Gold Corp. v. United States*, 41 Fed. Cl. 277, 283 (1998) (no taking where plaintiff granted military consent to cross its land).

The same is true for the dealers that did not sign Wind-Down Agreements because the agreements indisputably offered the GM plaintiffs the opportunity to wind-down their

[2] The GM plaintiffs do not explain the relevance of several of their discovery requests, including their request for discovery regarding "which outside counsel were used and for what purpose," and whether the Government complied with certain unidentified executive orders. Pls. Resp. Br. at 17. As a result, these requests cannot justify discovery under RCFC 56(d). *Theisen Vending*, 58 Fed. Cl. at 198.

operations, the very benefit that plaintiffs claim the Government confiscated. Plaintiffs argue that discovery is necessary to determine "what exact benefits were actually offered and to which dealers" and "how a more traditional bankruptcy would have compared to the benefits" offered through the Wind-Down Agreements. Pls. Resp. Br. at 15. On the first issue, no discovery is necessary to determine the benefits that were offered in the Wind-Down Agreements, because plaintiffs are in possession of those agreements and we have included the agreements in our appendix. A1-535.

Nor is discovery necessary to determine how the wind-down benefits compared to the benefits that plaintiffs allegedly would have received during an "orderly wind-down" in bankruptcy, which is the only "but-for" scenario at issue in this case. *Colonial Chevrolet Co. Inc. v. United States*, 123 Fed. Cl. 134, 146 (2015). Plaintiffs have not disputed that the Wind-Down Agreements provided a cash payment and the opportunity for dealers to remain in business for 17 months (from June 2009 through October 2010) to sell remaining new cars, purchase GM parts, and service GM cars on the road. A1, 3-6. Except for the cash payment, this is precisely what plaintiffs claim they would have received under their orderly wind-down scenario. *Colonial Chevrolet*, 123 Fed. at 145 (describing plaintiffs' orderly wind-down scenario as one in which "dealers could sell existing inventory, including new vehicles in the manufacturer's inventory" and "sell parts and service and repair vehicles on the road."); *see also* Am. Compl. ¶ 70(b)(2), ECF No. 101 (September 15, 2014); ECF No. 155-2 App. to Pls. Resp. Br, at App. 68, ¶ 12 (affidavit from President of GM plaintiff Colonial Chevrolet, Inc. stating that Wind-Down Agreement offered dealers the opportunity to "sell [ ] inventory for a time, and also service cars on the road during that time."). Accordingly, discovery regarding a comparison between the benefits offered in the Wind-Down Agreement and plaintiffs' orderly wind-down

scenario is unnecessary, cannot create a genuine issue of material fact, and should be denied under RCFC 56(d).

Plaintiffs also argue that discovery is necessary under RCFC 56(d) because the complaint is pled as a class action, and includes several subclasses, including (1) dealers who signed Wind-Down Agreements, (2) dealers who did not sign Wind-Down Agreements, and (3) dealers who signed Wind-Down Agreements and also participated in arbitration. Pls. Resp. Br. 12-13. But, again, plaintiffs never explain how this is relevant to the issues raised in our summary judgment motion. *See Paalan*, 57 Fed. Cl. at 18 (requiring that a plaintiff explain how the requested discovery materials "are relevant and necessary to the preparation of his opposition to defendant's motion for summary judgment"); *Chevron U.S.A. Inc.*, 72 Fed. Cl. at 819 (stating that discovery under RCFC 56(d) should be limited to the legal issues presented in the summary judgment motion).

Contrary to plaintiffs' suggestion, the number of plaintiffs in the lawsuit is inconsequential, as it is undisputed that (1) every terminated GM dealer was offered a Wind-Down Agreement, and (2) over 98 percent of those dealers signed Wind-Down Agreements, agreed to terminate their dealership agreements, and released all claims against the United States arising out of those dealership terminations. *See* ECF No. 155-2, App. to Pls. Resp. Br, at 40 ("all the [terminated] dealers were provided wind-down agreements at the same time."); *see also, e.g.*, A14 (showing that released parties included the United States as a stockholder of the "363 Acquirer," or New GM); *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1149 (Fed. Cir. 2014) ("[T]he government acquired a 60.8% ownership stake in New GM's common stock, as well as a portion of its preferred stock."); *In re Gen. Motors Corp*, 407 B.R. 463, 476 (Bankr.

S.D.N.Y. 2009), *aff'd*, *In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010) (*GM Sale Order*).[3]

Moreover, the putative class action nature of the case cannot justify discovery because there is no basis to certify this case as a class action. The Court already held that the Chrysler plaintiffs cannot show that common issues predominate, nor can they show that a class action is a superior method of litigation; Rule 23 requires these showings before a court certifies a class action. ECF No. 165, *Colonial Chevrolet Co., Inc. et al. v. United States*, Fed. Cl. No. 10-647, at 7-11 (April 6, 2016). Because the Court's holdings on the Chrysler plaintiffs' claims can be applied equally to the GM plaintiffs' claims, the putative class action nature of the GM plaintiffs' case cannot justify discovery under RCFC 56(d).

Finally, plaintiffs argue that the Court should permit discovery under RCFC 56(d) to allow plaintiffs to pursue their unpled allegation that the Wind-Down Agreements are invalid because they were the product of "duress, fraud, and/or misrepresentation." Pls. Resp. Br. at 14, 16-18. Plaintiffs' contention lacks merit for several reasons. First, plaintiffs fail to demonstrate "an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue" related to their duress claims; RCFC 56(d) requires such a showing to obtain discovery. *Theisen Vending*, 58 Fed. Cl. at 198. To the contrary, the amended

---

[3] Plaintiffs contend that the bankruptcy court's findings regarding which dealers signed Wind-Down Agreements are "irrelevant." Pls. Resp. Br. at 13, n.9. As support, plaintiffs rely upon *A&D Auto Sales*, in which the Federal Circuit held that the bankruptcy court's "findings on good faith are not collateral estoppel on the issue of coercion." *A&D Auto Sales*, 748 F.3d at 1156. In making that statement, the Federal Circuit plainly meant that "[w]hatever the bankruptcy court found [on the issue of 'good faith'] is immaterial [to the issue of coercion]," not that the Court should ignore the bankruptcy court's factual findings. *See id.* In any event, plaintiffs do not dispute that over 98 percent of the terminated GM dealers signed Wind-Down Agreements, nor do they dispute that only 31 GM dealers (who collectively had 60 GM dealership agreements) had their dealership agreements rejected in bankruptcy, contradicting the allegations in the GM plaintiffs' complaint. *See* Def. App. to Mot. for Summ. J., ECF No. 136-1, at A45-52 (bankruptcy court order identifying dealership agreements rejected in bankruptcy).

complaint references the Wind-Down Agreements, Am. Compl. ¶ 73(c), yet never alleges that those agreements are invalid, or that the GM plaintiffs were under any duress when they signed those agreements. Plaintiffs also fail to provide affidavits supporting their claim that the Wind-Down Agreements were the result of duress, fraud, or misrepresentation. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant."). In fact, the only GM-dealer affidavit attached to plaintiffs' response to our summary judgment motion disproves plaintiffs' duress allegations. Mr. Smith, president of lead GM plaintiff, Colonial Chevrolet Co., Inc., states that upon receiving the Wind-Down Agreement, he reviewed it and then decided against signing it. This fact contradicts plaintiffs' contention that the GM plaintiffs were forced to sign Wind-Down Agreements. ECF No. 155-2, App. to Pls. Resp. Br. at 66, Smith Aff. ¶¶ 12, 14.

In addition to lacking any factual support, plaintiffs' duress allegations also fail as a matter of law because: (1) plaintiffs failed to plead duress; (2) plaintiffs failed to assert duress until years after the Wind-Down Agreements were signed; and (3) the Government was not a party to the Wind-Down Agreements. *See* below at 17-20. These three facts bar plaintiffs from now seeking to invalidate the Wind-Down Agreements. Consequently, the Court should deny plaintiffs' request to conduct discovery under RCFC 56(d) regarding the validity of the Wind-Down Agreements.

### C. Plaintiffs' Request For "Full Merits Discovery" To Respond To Our Summary Judgment Motion Is Baseless

Even if plaintiffs could show that some discovery was appropriate under RCFC 56(d) and *Theisen Vending* (and they cannot), any such discovery should be limited to those factual matters

"essential" to plaintiffs' opposition to our motion for summary judgment. RCFC 56(d); *see also Opryland USA Inc. v. The Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992) (discovery is allowed to respond to summary judgment motion "when the discovery is reasonably directed to 'facts essential to justify the party's opposition.'"); *First Nationwide Bank v. United States*, 51 Fed. Cl. 762, 770 (2002) (granting "limited purpose" discovery to respond to summary judgment motion). The Court should not, as plaintiffs suggest, permit "full merits discovery" to respond to our motion for summary judgment, which would have the effect of rendering our motion moot until the end of all discovery. Pls. Resp. Br. at 18-19. Plaintiffs' request to conduct full-blown discovery under the guise of RCFC 56(d) is particularly inappropriate in this case, because discovery will be time-intensive and expensive, a result which flouts the entire purpose of summary judgment. *See Celotex Corp.*, 477 U.S. at 327 (summary judgment is not "a disfavored procedural short cut" and is designed to efficiently resolve cases without genuine issues of material fact).

The only legal support plaintiffs provide for their suggestion that the parties should engage in full merits discovery before resolution of our motion for summary judgment is *Jade Trading v. United States*, 60 Fed. Cl. 558 (2004). Pls. Resp. Br. at 18-19. In that case, the Court declined to limit discovery to matters essential to resolving plaintiffs' motions for partial summary judgment. *Jade Trading*, 60 Fed. Cl. at 566. The Court did so, however, because limiting discovery to the facts essential to responding to plaintiffs' three partial motions for summary judgment would have involved "hairsplitting" and would have been a "waste of the parties' time." *Id.* at 566 n.8. Unlike the multiple partial summary judgment motions at issue in *Jade Trading*, our motion would dispose of all of the GM plaintiffs' claims. Thus, resolving our motion ahead of merits discovery will save the parties' time in this case, rather than waste it.

Similarly, limiting plaintiffs' pre-motion discovery would not result in "hairsplitting," the Court's concern in *Jade Trading*. Our motion is premised solely upon the legal effect of the Wind-Down Agreements, a discrete legal issue that does not require any discovery, much less the full merits discovery demanded by plaintiffs. Pls. Resp. Br. at 17-18.

## III. The Court Should Grant The Government's Motion For Summary Judgment Because Plaintiffs' Unpled Duress Allegations Fail As A Matter Of Law

In addition to seeking discovery under RCFC 56(d), plaintiffs also oppose our summary judgment motion. Pls. Resp. Br. 19-25. Plaintiffs' principal arguments[4] in opposition are (1) that the Wind-Down Agreements are invalid because they were allegedly "forced on the dealers in haste, and under a situation of duress;" (2) that the agreements lacked "sufficient consideration;" and (3) that the releases contained in the agreements were "secured by fraud or misrepresentation." Pls. Resp. Br. at 22-24. These allegations fail as a matter of law for three independent reasons. First, the Court lacks jurisdiction to invalidate the Wind-Down Agreements, because they are agreements between to private parties. Second, the GM plaintiffs forfeited their duress claims by failing to promptly assert and plead those claims. Finally, plaintiffs' attacks upon the Wind-Down Agreements fail to raise a genuine issue of material fact.

### A. The Court Lacks Jurisdiction To Invalidate The Wind-Down Agreements

There is no dispute that the Wind-Down Agreements are bilateral agreements between GM and plaintiffs, two private entities. A2-535. Nonetheless, plaintiffs ask this Court to deny

[4] Plaintiffs also argue that summary judgment should be denied because there are allegedly genuine issues of material fact related to (1) the arbitration proceedings and (2) whether the Wind-Down Agreements offered plaintiffs the same benefits they claim they were denied had GM undergone an orderly wind-down in bankruptcy. Pls. Resp. Br. at 21, 24-26. As we explained in detail above, neither issue raises a genuine issue of material fact because (1) the arbitration proceedings are irrelevant to our motion for summary judgment, and (2) the terms of the Wind-Down Agreements prove that those agreements offered plaintiffs the same benefits (opportunity to sell remaining new cars, purchase GM parts, and service GM cars on the road) that plaintiffs claim they would have received in an orderly wind-down of GM in bankruptcy.

the Government's summary judgment motion based upon their argument that the Wind-Down Agreements are invalid. Plaintiffs' effort fails because this Court "has no jurisdiction to hear or decide claims between private parties." *Orion Scientific Sys. v. United States*, 28 Fed. Cl. 669, 670 (1993); *see also United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 78 Fed. Cl. 303, 307 (2007) (holding that "dispute between two private parties [ ] is outside the realm of this [C]ourt's limited jurisdiction.").

In fact, the Wind-Down Agreements state that the "the Bankruptcy Court shall retain full, complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto." *See, e.g.*, A8 (Wind-Down Agreement § 13); *Thys Chevrolet, Inc. v. Gen. Motors LLC*, 2010 WL 4004328, at *9 (N.D. Iowa Oct. 12, 2010) (finding that the bankruptcy court (1) reserved jurisdiction to "resolve disputes 'with respect to or concerning' the wind-down agreements" and (2) is "fully capable" of addressing plaintiffs' argument that the Wind-Down Agreements were signed under duress); *GM Sale Op'n*, 407 B.R. at 515 (holding that there "[t]here is no basis in law or fact for holding that these [Wind-Down Agreements] were unlawfully coerced."). In short, the bankruptcy court possesses exclusive jurisdiction to resolve plaintiffs' disputes relating to the Wind-Down Agreements. Accordingly, plaintiffs' attempt to invalidate the Wind-Down Agreements in this Court fails to raise genuine issues of material fact.

### B. Plaintiffs Forfeited Their Duress Claims By Failing To Plead Those Claims And Failing To Promptly Raise Them

As discussed above, plaintiffs' amended complaint discusses the Wind-Down Agreements, but never alleges that the agreements are invalid. *See* Am. Compl. ¶ 73(c). The Court should reject plaintiffs' attempt to assert duress, fraud, and misrepresentation allegations for the first time in a response to a summary judgment motion, six years after the complaint was

filed. *See, e.g.*, *RQ Squared, LLC v. United States*, 119 Fed. Cl. 751, 759 (2015) ("As a general matter, claims raised in responsive briefing do not serve to amend a complaint."); *Varnadore v. Nationwide Mut. Ins. Co.*, 2014 WL 2095373, at *6 (S.D. Ohio May 20, 2014) (rejecting economic duress argument because "the complaint does not use the word 'duress' and does not otherwise contain allegations that [ ] plaintiff would be claiming economic duress.").

Plaintiffs' duress claims also fail as a matter of law because plaintiffs waited years before asserting those claims. It is well-established under both Michigan law (which governs the Wind-Down Agreements) and Federal common law that duress claims are forfeited if parties fail to promptly assert such claims. *Hillside Prods., Inc. v. Cty. of Macomb*, 2007 WL 1725403, at *4 (E.D. Mich. June 14, 2007), *aff'd*, 389 F. App'x 449 (6th Cir. 2010) ("a party must act promptly, upon removal of duress, to seek to avoid enforcement of the contract and must not retain any consideration after learning that the agreement is voidable.") (applying Michigan law); *DiRose v. PK Management Corp.*, 691 F.2d 628, 633 (2d Cir. 1982) (collecting cases in which delays ranging from six months to two years constituted forfeiture of duress claim); *see also Johnson, Drake & Piper, Inc. v. United States*, 209 Ct. Cl. 313, 531 F.2d 1037, 1043 (1976) ("a telling indication that no duress was practiced is [a] long delay before plaintiff spoke out and claimed duress."). Accordingly, because the GM plaintiffs failed to raise their duress claims before January 2016, six-and-a-half years after plaintiffs executed the agreements in June 2009, plaintiffs' duress claims have been forfeited and fail as a matter of law.

### C. Plaintiffs' Attacks On The Wind-Down Agreements Fail To Raise A Genuine Issue Of Material Fact

Plaintiffs also argue that there are "genuine issues of material fact regarding whether the Wind-Down Agreements and releases are valid under Michigan law." Pls. Resp. Br. at 21-24. But plaintiffs offer no evidence to support that argument. *Id.* Instead, plaintiffs recite Michigan

law for the unremarkable proposition that agreements and releases forced upon a party through duress, fraud, or misrepresentation are not valid. Plaintiffs' recitation of general legal principles cannot create a genuine issue of material fact, as "more is required [to avoid summary judgment] than mere assertions of counsel." *Pure Gold, Inc.*, 739 F.2d at 626-27; *see also T & M Distributors, Inc.*, 185 F.3d at 1285. To avoid summary judgment, plaintiffs "may not rest upon conclusory [allegations], but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Pure Gold, Inc.*, 739 F.2d at 627. Plaintiffs offer only one affidavit by a person with knowledge of the facts, the President of a GM dealership that did <u>not</u> sign the Wind-Down Agreement, contradicting plaintiffs' argument that GM dealers were forced to sign those agreements. Thus, plaintiffs' duress, misrepresentation, and fraud claims fail to raise genuine issues of material fact.

Finally, plaintiffs argue that there are genuine issues of material fact regarding whether the Wind-Down Agreements were supported by "sufficient consideration." Pls. Resp. Br. at 24. Like plaintiffs' other efforts to invalidate the Wind-Down Agreements, this argument fails as a matter of law and does not create a genuine issue of material fact. As this Court has stated, "[c]ourts do not evaluate the adequacy of consideration, only the existence of consideration." *Axion Corp. v. United States*, 68 Fed. Cl. 468, 476 (2005). Because it is undisputed that all GM plaintiffs that signed the Wind-Down Agreements received monetary compensation, A1, the agreements contained the consideration necessary to be enforced as valid agreements.

## CONCLUSION

For the reasons described above, this case has no merit and should not proceed further. The Court should deny the GM plaintiffs' request for discovery under RCFC 56(d) and grant the Government's motion for summary judgment on the GM plaintiffs' takings claims.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

/s/ Kenneth M. Dintzer
KENNETH M. DINTZER
Deputy Director
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-0385
Kenneth.Dintzer@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ELIZABETH M. HOSFORD
Assistant Director

JAMES P. CONNOR
Senior Trial Counsel

AMELIA R. LISTER-SOBOTKIN
MICHAEL A. RODRIGUEZ
ALISON S. VICKS
Trial Attorneys

May 12, 2016