# In the United States Court of Federal Claims

Nos. 10-647C, 11-100C, and 12-900C
(Filed: June 14, 2017)
**CONSOLIDATED**
**NOT FOR PUBLICATION**

| | |
|---|---|
| COLONIAL CHEVROLET CO., INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. <br> * * * * * * * * * * * * * * * * * * * * <br> ALLEY'S OF KINGSPORT, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. <br> * * * * * * * * * * * * * * * * * * * <br> SPITZER MOTOR CITY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | RCFC 56(d) |

**ORDER GRANTING-IN-PART AND DENYING-IN-PART**
**GM PLAINTIFFS' RULE 56(d) MOTION**

Pending before the court is a renewed motion for discovery pursuant to Rule 56(d) of the Rules of the United States Court of Federal Claims ("RCFC") filed by plaintiffs in *Colonial Chevrolet Co., Inc., et al. v. United States* (Case No. 10-647C). The plaintiffs are former General Motors Corporation ("GM") franchisees ("GM plaintiffs") who claim that the United States government's actions in connection with the GM bailout, which resulted in the United States becoming a majority shareholder in the post-bankruptcy GM, amounted to a taking of their franchise agreements without just compensation under the Fifth Amendment. As discussed in *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147, 1150 (Fed. Cir. 2014), the plaintiffs contend that the taking arose when the United States required GM to terminate the plaintiffs' car dealership franchise agreements as a condition to the government providing financial assistance to GM in 2009.

The plaintiffs claim that they need discovery in order to respond to the motion for summary judgment the government filed after this court rejected the government's motion to dismiss. *See Colonial Chevrolet Co., Inc. United States*, 123 Fed. Cl. 134, 136 (2015). In the motion for summary judgment, the government argues among other things that most of the GM plaintiffs' claims are barred by a release they signed in exchange for payments and other benefits in wind-down agreements offered by GM on June 1, 2009, the day GM filed for bankruptcy. Although the government was not a party to the wind-down agreements it argues that the releases in the wind-down agreements protect the United States and bar the GM plaintiffs' Fifth Amendment taking claims. The releases in the wind-down agreements state in relevant part as follows:

> Dealer . . . hereby releases, settles, cancels, discharges, and acknowledges
> to be fully satisfied any and all claims, demands, damages, debts; liabilities,
> obligations, costs, expenses, liens, actions, and causes of action of every
> kind and nature whatsoever . . . whether known or unknown, foreseen or
> unforeseen, suspected or unsuspected ("Claims"), which Dealer or anyone
> claiming through or under Dealer may have as of the date of the execution
> of this Agreement against GM, the 363 Acquirer, their Affiliates or any of
> their respective members, partners, venturers, stockholders, officers,
> directors, employees, agents, spouses, legal representatives, successors or
> assigns (collectively, the "GM Parties"), arising out of or relating to . . . the
> Dealer Agreements or this Agreement . . . or any other events, transactions,
> claims, discussions or circumstances of any kind arising in whole or in part
> prior to the effective date of this Agreement . . . .

Def.'s Reply App. A131 (ECF No. 181).  The government argues that as the majority

shareholder in the new GM it is protected from all of the claims filed by those plaintiffs

that signed the wind-down agreements.

According to the GM plaintiffs, they cannot respond to the government's

contention that the releases they signed bar their claims without discovery into the

government's role in overseeing the GM bailout and in drafting the wind-down

agreements.  In this connection the plaintiffs contend that the releases do not cover their

claims but that if the releases are broad enough to bar their claims the releases are

unenforceable.  Specifically they argue that the government misrepresented its role by not

identifying itself in the release and that the government placed plaintiffs under duress by

giving them only 12 days to review their wind-down agreements.  The GM plaintiffs seek

to depose several former government officials who were instrumental in designing the

GM bailout.  They also seek documents from the Special Inspector General for the

Troubled Asset Relief Program ("SIGTARP").  The GM plaintiffs also argue that in order

to respond to the government's argument that their dealerships would have had no value

without a government bailout, they seek discovery regarding the government's ownership of GM cars and trucks to establish the value of servicing government-owned GM cars and trucks.

After careful consideration, the court finds that the GM plaintiffs may conduct limited discovery to determine the government's role, if any, in the drafting of the wind-down agreements in order to respond to the government's contention that the releases bar plaintiffs' Fifth Amendment claims. However, the plaintiffs' request for discovery into whether the government endeavored to intentionally misrepresent its role in new GM in order to induce plaintiffs to sign releases with old GM is denied. Plaintiffs have not presented any basis for discovery into whether the government fraudulently misrepresented its role in new GM or caused plaintiffs duress. In addition, the court finds that the plaintiffs may also conduct limited discovery into the government's fleet of GM vehicles at the time of the bailout. Therefore, the plaintiffs' renewed RCFC 56(d) motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.[1]

## I.   LEGAL STANDARDS

Under RCFC 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow

---

[1] The GM plaintiffs' motion (ECF No. 260), filed June 2, 2017, for leave to supplement the record with a video recording of Mr. Rattner from March 10, 2011 describing the restructuring of Chrysler and GM is **GRANTED**.

time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order."

Interpreting the analogous Federal Rule of Civil Procedure, the Federal Circuit has

found that "[w]hen the discovery is reasonably directed to 'facts essential to justify the

party's opposition,' . . . such discovery must be permitted or summary judgment

refused." *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed.

Cir. 1992) (citations omitted).

Ordinarily to meet this standard a plaintiff must:

(1) specify the particular factual discovery being sought, (2) explain how
the results of the discovery are reasonably expected to engender a genuine
issue of material fact, (3) provide an adequate factual predicate for the
belief that there are discoverable facts sufficient to raise a genuine and
material issue, (4) recite the efforts previously made to obtain those facts,
and (5) show good grounds for the failure to have discovered the essential
facts sooner.

*Theisen Vending Co. v. United States*, 58 Fed. Cl. 194, 198 (2003).

## II.   DISCUSSION

### A.   The GM Plaintiffs May Conduct Limited Discovery Regarding the Scope of the Release in the Wind-Down Agreement But Not Into Their Claims of Fraudulent Misrepresentation or Duress.

While the GM plaintiffs argue as a matter of law that their releases do not cover

their Fifth Amendment claims, they also argue as a factual matter that the releases were

never intended to cover their constitutional claims against the United States. They argue

that discovery will show that the wind-down agreements did not extend to Fifth

Amendment takings claims.

The court agrees with the GM plaintiffs that they may conduct discovery regarding the government's role in the wind-down agreements in order to establish the intent of the parties regarding the scope of the releases signed.  This court has found that "[w]hen the United States asserts its rights as a third party beneficiary to a private agreement," in particular with regard to a release, "the United States has the burden of showing that it is entitled to those rights under the state law governing that agreement."  *W. Chelsea Buildings, LLC v. United States*, 109 Fed. Cl. 5, 16-17 (2013) (citing *United States v. State Farm Mut. Auto. Ins. Co.*, 936 F.2d 206, 207 (5th Cir. 1991)).  Under Michigan law, which the court agrees with plaintiffs governs the wind-down agreements they entered into with Old GM, "[i]f the text in the release is unambiguous," the court "must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release."  *Gortney v. Norfolk & W. Ry. Co.*, 549 N.W.2d 612, 614 (Mich. Ct. App. 1996) (citations omitted).[2]  A release is ambiguous "if its language is reasonably susceptible to more than one interpretation."  *Id.* at 615 (citations omitted).

Without resolving the merits of the government's motion for summary judgment, the court finds that where the United States is not identified by name and there is no mention of constitutional claims, discovery into the scope of the release language is appropriate, including discovery into the role of the United States, if any, in drafting the release.

---

[2] The wind-down agreements state "[t]his Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan."  *E.g.*, Def.'s Reply App. A135 (ECF No. 181).

In their RCFC 56(d) motion, the GM plaintiffs also contend that, if the court finds the releases extend to their constitutional claims, the releases in the wind-down agreements are invalid on the grounds that they were obtained due to fraudulent misrepresentation or duress.  Under Michigan law, "[a] release is invalid if (1) the releasor was acting under duress, (2) there was misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release." *Brooks v. Holmes*, 413 N.W.2d 688, 689 (Mich. Ct. App. 1987) (per curiam) (citations omitted); *Skotak v. Vic Tanny Int'l, Inc.*, 513 N.W.2d 428, 430 (Mich. Ct. App. 1994) (per curiam).  Citing Michigan law, as required by the wind-down agreements, the plaintiffs argue that they are seeking discovery to show that the releases are invalid on the grounds that:

> (1) the defendant made a material representation, (2) it was false, (3) the defendant knew it was false when made, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) it was made with the intention to induce reliance by the plaintiff, (5) the plaintiff acted in reliance upon it, and (6) the plaintiff thereby suffered injury.

*State-William P'ship v. Gale*, 425 N.W.2d 756, 761 (Mich. Ct. App. 1988).

In affidavits filed with their discovery request, the GM plaintiffs state that they relied on the statement of President Obama that the United States did not intend to run GM and thus they were unaware of the extent of the government's control over the operations of GM, that the government intentionally concealed its role in GM at the time they signed the wind-down agreements in order to induce them to sign the agreements, and that they suffered injury because of the government's actions.

The GM plaintiffs also argue that the releases are void on the grounds of economic duress because the plaintiffs were subject to a wrongful act or threat that deprived them of their unfettered will and they had no adequate legal remedy available.  Pl.'s Mot. 22 (quoting *Barnett v. International Tennis Corp.*, 263 N.W.2d 908 (Mich. Ct. App. 1978)). Specifically, the GM plaintiffs assert that they felt coerced due to "the short time frame in which they had to sign the wind-down agreements." *Id.* at 23 (citing plaintiffs' affidavits).  For example, Ms. VanderMeer states in her affidavit that she believes the short time frame was imposed on her "to prevent me from discovering the true role of the Federal government in terminating my dealership" and that it prevented her "from obtaining proper legal advice and from allowing an attorney to examine the wind-down agreement and liability release agreement and advising me of the true nature of the claims and rights I was giving up by signing the agreements."  Ms. VanderMeer states that she believes "this was done intentionally by the Federal government officials who I did not know at the time were operating and managing GM."  Mr. Gibson adds in his affidavit that he felt his "choices at the time, when facing the death of my dealership, were between shooting it in the head and suffering an immediate death or shooting it in the stomach and suffering a delayed death."

To invalidate a release clause on the grounds of misrepresentation, "a misrepresentation must be made with the intent to mislead or deceive." *Castillo v. Vannuil*, No. 323581, 2015 WL 6161860, at *4 (Mich. Ct. App. Oct. 20, 2015) (per curiam) (citing *Paterek v. 6600 Ltd.*, 465 N.W.2d 342, 345 (Mich. Ct. App. 1990) (per curiam)).  "An innocent misrepresentation is insufficient to invalidate a release." *Pape v.*

*Dobronski*, No. 320552, 2015 WL 3448727, at *2 (Mich. Ct. App. May 28, 2015) (quoting *Hungerman v. McCord Gasket Corp.*, 473 N.W.2d 720 (Mich. Ct. App. 1991)).

Under Michigan law, each element of misrepresentation "must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012) (citations omitted); *see also In re Complaint of Rovas Against SBC Mich.*, 754 N.W.2d 259, 283 (Mich. 2008) (citing *Hi–Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813 (Mich. 1976); *Candler v. Heigho*, 175 N.W. 141 (Mich. 1919)).

Michigan courts have found that to satisfy the first element, generally, representations must be "statements of past or existing fact, rather than future promises or good-faith opinions." *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 452 (Mich. 2008) (citing *Hi-Way Motor Co.*, 247 N.W.2d 813; *Danto v. Charles C. Robbins, Inc.*, 230 N.W. 188 (Mich. 1930); *Foreman v. Foreman*, 701 N.W.2d 167 (Mich. Ct. App. 2005); *see also Delta Props., Inc. v. Motor Wheel Corp.*, No. 177965, 1997 WL 33343966, at *2 (Mich. Ct. App. Sept. 9, 1997) ("Future promises" or "an expression of . . . anticipated action . . . are not actionable in tort." citing *Hi-Way Motor Co.*, 247 N.W.2d at 817)); *State-William*, 425 N.W.2d at 761 (finding that statements about the probability of a lease were opinions, not misrepresentations of fact). "[A] promise made in bad faith without intention of performance" can only serve as the basis for a fraudulent misrepresentation claim if "evidence of fraudulent intent . . . relate[s] to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *Hi-Way Motor Co.*, 247 N.W.2d at 816-17 (citations omitted).

With regard to the second element, statements must be "objectively false or misleading." *Cooper*, 751 N.W.2d at 452 (citing *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543 (Mich. 2000) (per curiam)).

With regard to the third and fourth elements, the plaintiff must show "(1) knowledge of falsity or reckless disregard of the truth or falsity of a statement, and (2) an intent that a person detrimentally rely on the statement." *In re Complaint of Rovas Against SBC Mich.*, 754 N.W.2d at 278. With regard to alleged misrepresentation regarding a release, "the failure to specifically draw another's attention to a particular clause of a contract" does not amount to a misrepresentation "made with the intent to mislead or deceive." *Castillo*, 2015 WL 6161860, at *4. "Quite the contrary, it is the responsibility of one signing an agreement to know and understand its contents." *Id.* (citing *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845 (Mich. 1991)). "The purpose of the fraudulent conduct must be to secure the release." *Gonzalez v. Rusty Wallace Racing Experience*, No. 319471, 2015 WL 159490, at *3 (Mich. Ct. App. Jan. 13, 2015) (citing *Brooks v. Holmes*, 413 N.W.2d 688 (Mich. Ct. App. 1987)), *appeal denied*, 870 N.W.2d 722 (Mich. 2015).

With regard to the fifth element, the evidence must demonstrate that the alleged misrepresentation was at least "a contributing influence upon plaintiff's decision." *McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 405 N.W.2d 88, 97 (Mich. 1987). However, the plaintiff's actions in reliance upon the misrepresentation must be reasonable. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 554 (Mich.

Ct. App. 1999)).  A plaintiff cannot ignore contradictory information.  *Titan Ins. Co.*, 817 N.W.2d at 568 n.4 (citations omitted).  "[F]raud cannot be 'perpetrated upon one who has full knowledge to the contrary of a representation.'"  *Cooper*, 751 N.W.2d at 451 (quoting *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607 (Mich. 1951)).

Lastly, Michigan courts have explained that the alleged injury must occur "as a consequence" of the fraudulent misrepresentation.  *Cooper*, 751 N.W.2d at 452 (citing *Hi-Way Motor Co.*, 247 N.W.2d 813).

With regard to plaintiffs' duress argument, Michigan courts have long held that "[d]uress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." *Norton v. Michigan State Highway Dep't*, 24 N.W.2d 132, 135 (Mich. 1946) (quoting *Hackley v. Headley*, 8 N.W. 511, 512-13 (Mich. 1881)).  "Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully."  *Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 404 N.W.2d 725, 728 (Mich. Ct. App. 1987).

Given these legal standards, the GM plaintiffs have not demonstrated any grounds for allowing discovery into whether the subject releases were obtained through fraudulent misrepresentation or duress. First and foremost, there is no evidence to support plaintiffs' assertion that President Obama's statement regarding "running GM" was a misrepresentation intended to mislead plaintiffs into signing the releases in the wind-down agreements.  President Obama's remarks were not false or misleading.  In the remarks referenced by the GM plaintiffs, entitled "Remarks by the President on General

Motors Restructuring," dated June 1, 2009, President Obama expressly stated that the government was becoming a majority stockholder in GM.  He stated that "our government will be making a significant additional investment of about $30 billion in GM -- an investment that will entitle American taxpayers to ownership of about 60 percent of the new GM."  He then explained that in "taking so much stock in GM . . . we are acting as reluctant shareholders," and that "[t]he federal government will refrain from exercising its rights as a shareholder in all but the most fundamental corporate decisions." Importantly, he concluded by explaining that:

> Building a leaner GM will come at a cost. . . .  So I want to say a word
> directly to all the men and women watching today, wondering what all of
> this will mean as far as their own lives are concerned. . .  More dealerships
> will shut their doors . . . .

These public remarks make absolutely clear that the government played a crucial role in the bailout of GM and became a stockholder in the post-bankruptcy company. Plaintiffs cannot claim based on the public statements of President Obama that the government misled them as to the United States' role in the GM bailout.  Accordingly, even if plaintiffs are correct that the government "played down" its role in the day-to-day management of GM, Pls.' Reply 8 (ECF No. 244), that is not sufficient to overcome the fact that nothing in President Obama's remarks, which plaintiffs rely on, were false or misleading.  President Obama made it clear the United States was becoming a controlling stockholder and that some dealerships would be closing.

In addition, the fact that the plaintiffs' attention was not drawn to the language in the release clause or to the United States' role as a stockholder is irrelevant to show

misrepresentation as a basis for discovery.  Under Michigan law, it was the plaintiffs'
responsibility to know and understand the contents of the agreements.  "[O]ne who signs
a contract will not be heard to say, when enforcement is sought, that he did not read it, or
that he supposed it was different in its terms."  *Wilkie v. Auto-Owners Ins. Co.*, 664
N.W.2d 776, 786 (Mich. 2003) (quoting *Farm Bureau Mut. Ins. Co. of Michigan v.
Nikkel*, 596 N.W. 915, 920 (Mich. 1999)).

     With regard to their duress argument, plaintiffs' reliance on *Barnett v. Int'l Tennis
Corp.*, 263 N.W.2d at 913, is misplaced.  In *Barnett*, 263 N.W.2d at 913, the Court of
Appeals of Michigan quoted the longstanding rule from *Hackley v. Headley*, 8 N.W. 511
at 512, that "[d]uress exists when one by the unlawful act of another is induced to make a
contract or perform some act under circumstances which deprive him of the exercise of
free will."  Plaintiffs cite only the "basic elements" of duress that the *Barnett* court
quoted from Professor Williston's treatise on contracts.  Moreover, plaintiffs rely entirely
on the short time frame the plaintiffs had to decide whether to execute the wind-down
agreements.  The plaintiffs have not shown or even alleged that the government engaged
in any unlawful act and therefore the plaintiffs' proposed discovery cannot be reasonably
expected to result in evidence showing that the plaintiffs were "induced by any unlawful
act of [the United States] to make a contract under circumstances which deprived them of
their free will."  *Barnett*, 263 N.W.2d at 913.

     In sum, plaintiffs have not provided any grounds to support their claims of
fraudulent misrepresentation or duress.  Their affidavits fail to provide a basis for
discovery under Michigan law standards for fraudulent misrepresentation or duress.  In

such circumstances, plaintiffs' request for discovery in order to prove duress or that the government made a material misrepresentation must be denied.

### B.    Limited Discovery Regarding the Government's GM Fleet Will Be Allowed.

In its motion for summary judgment, the government argues that the claims by the GM plaintiffs that did not sign wind-down agreements with releases should be barred on the grounds that the benefits offered through the wind-down agreements were equal to or greater than what those GM plaintiffs would have received had GM been liquidated in an orderly bankruptcy proceeding.

The GM plaintiffs argue that they need discovery regarding the government's plan for servicing its fleet of GM vehicles to show that the dealerships of the six named plaintiffs who did not sign the wind-down agreements had more value than what they were offered by GM as part of the wind-down agreements.  Pl.'s Mot. 29.  Plaintiffs have provided an affidavit from their expert, Edward M. Stockton, vice president and director of economics services for The Fontana Group, Inc., in which Mr. Stockton states that plaintiffs asked him "to establish to a reasonable degree of scientific certainty the value of certain General Motors ("GM") dealerships at and around the time they were terminated in approximately 2009."  Pls.' Mot. App. B at 2.  In his affidavit Mr. Stockton states:

> In order to valuate these GM Dealerships fully and fairly from an economic standpoint, it is necessary to consider sufficient information to inform the analysis across the realm of potential material profit sources for the franchise.  That information includes an accounting of the fleet of GM vehicles in the possession of the federal government at and around the time of the GM dealership terminations.

*Id.* at 3.  According to Mr. Stockton, this information is necessary because (1) maintenance was a large portion of GM Plaintiffs' business models, (2) the government fleet was large and therefore significant, (3) this information is not publicly available, and (4) the government fleet affected the value of all GM Plaintiffs' dealerships regardless of whether the specific dealership being valuated ever actually serviced any federal GM vehicles.  App. B at 3-4.

In its response the government asserts that this discovery request must be denied on the grounds that the plaintiffs already possess information regarding the number of government vehicles serviced by or purchased from plaintiffs' dealerships and information about government vehicles is publicly available in the General Service Administration's "Federal Fleet Report."

The court agrees with the plaintiffs that they may conduct discovery regarding the government's plan for servicing its fleet of GM vehicles.  The plaintiffs argue that they require discovery regarding not only their own dealerships.  In addition, the General Service Administration's "Federal Fleet Report" relied upon by the government does contains detailed information on the government's inventory of vehicles, including whether those vehicles are owned or leased, the costs of operating the vehicles, and how many vehicles were purchased by the government in 2009, but it does not contain the information the plaintiffs seek regarding GM vehicles.

## III.   CONCLUSION

For the reasons above, the GM plaintiffs' motion for discovery pursuant to RCFC 56(d) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

The plaintiffs shall have until **June 30, 2017** to file proposed discovery requests consistent with this order together with a proposed schedule for discovery and finalizing briefing on the government's motion for summary judgment with regard to the GM plaintiffs.  If the parties cannot agree, the government shall have until **July 14, 2017** to file a response.

      **IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
