# In the United States Court of Federal Claims

Nos. 10-647C, 11-100C, and 12-900C
(Filed: July 29, 2022)
**CONSOLIDATED**

| | | |
|---|---|---|
| COLONIAL CHEVROLET CO., INC., et al., | ) ) ) | Taxation of Costs; RCFC 54(d); |
| Plaintiffs, | ) | Premature Bill of Costs; |
| v. | ) ) | Equitable Reduction; Transcript Costs; Witness Costs; |
| THE UNITED STATES, | ) ) | Duplication Costs; Deposition Costs; Apportionment |
| Defendant. | ) | |
| * * * * * * * * * * * * * * * * * * * * | ) | |
| ALLEY'S OF KINGSPORT, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) | |
| * * * * * * * * * * * * * * * * * * | ) | |
| UNION DODGE, INC., et al., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

*Roger J. Marzulla*, Washington, DC, for the *Alley's of Kingsport, Inc.* plaintiffs, with whom were *Nancie G. Marzulla* and *Cindy Lopez*. *Thomas A. Holman,* New York, NY, and *Leonard A. Bellavia*, Mineola, NY, of counsel.

*Harry W. Zanville*, La Mesa, CA, for the *Colonial Chevrolet Co., Inc.* plaintiffs. *Richard Faulkner*, Dallas, TX, of counsel.

*Cameron Cohick*, U.S. Department of Justice, Civil Division, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Elizabeth M. Hosford*, Assistant Director.  *Alison S. Vicks* and *Rebecca S. Kruser*, of counsel.

## OPINION ON TAXATION OF COSTS

**FIRESTONE,** *Senior Judge.*

Now pending before the court in these consolidated cases are the plaintiffs' motions for review of the Clerk of Court's June 9, 2022 Taxation of Costs against the plaintiffs in the amount of $145,619.34.  For the reasons that follow, the court **GRANTS IN PART** and **DENIES IN PART** the motions for review.  Costs are taxed against plaintiffs in the total amount of $128,299.53.

## I.    BACKGROUND

These consolidated Fifth Amendment takings cases were brought by car dealers operating as franchisees of Chrysler LLC and General Motors Company.  This opinion on costs applies only to the representative set of Chrysler plaintiffs against whom there is a final judgment.  *See* Rule 54(b) Judgment, ECF No. 505.  The General Motors plaintiffs' claims are proceeding on a separate schedule and are not the subject of the pending motions for review.  *See Colonial Chevrolet Co., Inc. v. United States*, 145 Fed. Cl. 243, 246 (2019).  The remaining Chrysler plaintiffs' claims will be resolved following this decision.  *See* Scheduling Order at 2, ECF No. 531.

In 2009, Chrysler filed a petition for reorganization in bankruptcy and rejected the Chrysler plaintiffs' franchise agreements in the bankruptcy proceeding.  *Taylor & Sons, Inc. v. United States*, 841 F. App'x 205, 206 (Fed. Cir. 2020).  The plaintiffs sued defendant the United States in this court alleging that the government played a role in

2

Chrysler's rejection of the franchise agreements that constituted a taking of their property in violation of the Fifth Amendment to the United States Constitution. *Id.*

On October 2, 2019, this court after a weeks-long trial issued an opinion directing the Clerk of Court to enter judgment for the United States as to the takings claims of a group of nine representative Chrysler plaintiffs. *Colonial Chevrolet*, 145 Fed. Cl. at 324. The nine included two plaintiffs from the *Colonial Chevrolet Co., Inc.* case (No. 10-647C) ("*Colonial* plaintiffs") and seven plaintiffs from the *Alley's of Kingsport, Inc.* case (No. 11-100C) ("*Alley's* plaintiffs").[1]  *Taylor & Sons*, 841 F. App'x at 206.  After that decision was affirmed on appeal, *id.*, the government on April 23, 2021 filed a bill of costs pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims ("RCFC"), seeking $183,463.08.  Bill of Costs at 1-2, ECF No. 522.  By plaintiffs' request, briefing on the bill of costs was stayed pending an anticipated petition for a writ of certiorari before the United States Supreme Court.  *See* Pls.' Unopp. Mot. to Stay Bill of Costs at 1-2, ECF No. 523; Order Granting Mot. to Stay Bill of Costs at 2, ECF No. 524.

Following the denial of plaintiffs' petition for a writ of certiorari, briefing on the bill of costs proceeded, with responses in opposition filed by the plaintiffs, replies filed by the government, and sur-replies filed by the plaintiffs.  On June 9, 2022, the Clerk of Court after a thorough review issued a Taxation of Costs, disallowing $37,843.74[2] of the

---

[1]  When originally filed, the *Colonial* case had 103 of the total 273 Chrysler plaintiffs in the consolidated cases.  *Colonial* Mot. for Review at 34 n.29, ECF No. 554.

[2]  Part of this disallowance includes costs voluntarily withdrawn by the government.  Taxation of Costs at 3 n.3.

costs claimed by the government and taxing $145,619.34 jointly and severally among the plaintiffs. Taxation of Costs at 20, ECF No. 553.

The *Alley's* and *Colonial* plaintiffs have now filed motions for review of the Clerk's Taxation of Costs pursuant to RCFC 54(d). Both sets of plaintiffs raise three grounds in support of their motions. First, the plaintiffs argue that because it was premature, the bill of costs is untimely and the court lacks jurisdiction to consider it. Second, the plaintiffs contend that the court should exercise its discretion to deny the claimed costs for several equitable reasons. Third, the plaintiffs raise specific objections to certain claimed costs as unreasonable, unnecessary, duplicative, and inadequately supported. *See generally Alley's* Mot. for Review, ECF No. 555; *Colonial* Mot. for Review, ECF No. 554. The *Colonial* plaintiffs additionally argue that costs should be apportioned between the two sets of representative Chrysler plaintiffs, rather than among the plaintiffs jointly and severally. *Colonial* Mot. for Review at 34-35. The *Alley's* plaintiffs do not comment on apportionment, but argue that it is unfair to apply all costs to the nine representative Chrysler plaintiffs only. *Alley's* Mot. for Review at 7.

The government does not challenge, and asks the court to uphold, the Clerk's Taxation of Costs. In its responses to the plaintiffs' motions for review, the government contends that its bill of costs, while premature, should be deemed timely filed. The government further argues that plaintiffs' equitable reasons for reducing or denying costs are speculative and unsupported. As to the specific cost challenges, the government contends that its claimed costs are reasonable and adequately supported. *See generally* Def.'s *Alley's* Resp., ECF No. 557; Def.'s *Colonial* Resp., ECF No. 558. In addition,

4

because the claimed costs pertain to the government's defenses applicable to all plaintiffs, the government asserts that the court should decline to apportion costs between the *Alley's* and *Colonial* plaintiffs.  Def.'s *Colonial* Resp. at 29-30.  The government also argues that it is not unfair to tax costs only against the representative plaintiffs.  Def.'s *Alley's* Resp. at 8-9.

In reply, the *Alley's* plaintiffs stand on their prior filings and objections.  *Alley's* Reply at 2, ECF No. 560.  The *Colonial* plaintiffs reiterate their arguments that the bill of costs should not be deemed timely, that the government failed to prove certain costs were necessary and reasonable, that the court should use its discretion to limit the request for costs, and that the government should not be entitled to joint and several liability. *Colonial* Reply at 4-17, ECF No. 559.

After review of the parties' submissions, the court deems oral argument unnecessary.

## II.   LEGAL STANDARDS

RCFC 54(d)(1) provides that the court may tax costs in favor of the prevailing party "to the extent permitted by law."  RCFC 54(d)(1) (citing 28 U.S.C. § 2412(a)). "The language of RCFC 54(d)"—providing that costs "should be allowed to the prevailing party"—"reflects the long-standing presumption in favor of awarding costs to prevailing litigants."  *First Fed. Sav. & Loan Ass'n v. United States*, 88 Fed. Cl. 572, 597 (2009).  There is no dispute in these cases that the government is the "prevailing party" and that the government as a prevailing party may be entitled to costs.  *See Salem Fin., Inc. v. United States*, 134 Fed. Cl. 544, 547, 550 (2017) (awarding costs to the

5

government under RCFC 54(d)); 28 U.S.C. § 2412(a) ("[A] judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States . . . ."); *Pine River Logging & Improvement Co. v. United States*, 186 U.S. 279, 296 (1902) ("[T]he United States [can] recover the same costs as if they were a private individual.").

Cost awards as relevant here are governed by 28 U.S.C. §§ 1821 and 1920.  *See Salem Fin.*, 134 Fed. Cl. at 547.  Section 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987).  Section 1920 lists taxable costs, such as "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" or "[f]ees and disbursements for printing and witnesses."  28 U.S.C. § 1920(2)-(3); *see also* RCFC, App. Form 4.  In addition, 28 U.S.C. § 1821 governs the amount of attendance fees, travel allowances, and subsistence allowances paid to witnesses for court proceedings and depositions.

The prevailing party has the burden to establish that it is entitled to costs, and must show that its requested costs are "allowable, reasonable, and necessary."  *Sonoma Apartment Assocs. v. United States*, 150 Fed. Cl. 226, 228 (2020) (citing *Soler v. Waite*, 989 F.2d 251, 255 (7th Cir. 1993)); *see also First Fed.*, 88 Fed. Cl. at 597; *Salem Fin.*, 134 Fed. Cl. at 547; *Standard Commc'ns, Inc. v. United States*, 106 Fed. Cl. 165, 175 (2012) (citing *In re Ricoh Co.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying a regional circuit's interpretation of Section 1920)).  The prevailing party is "obligated to provide clear documentation that allows the court to determine whether the costs were reasonable

and necessary to the litigation," *Standard Commc'ns*, 106 Fed. Cl. at 175, and RCFC

54(d)(1)(B)(iii) requires vouchers, receipts, or invoices to be attached as exhibits.  Once

the prevailing party demonstrates that it is entitled to costs, the burden shifts to the

unsuccessful party to show circumstances that are sufficient to overcome the presumption

in favor of awarding costs to the prevailing party.  *See Sonoma Apartment*, 150 Fed. Cl.

at 228; *Crosby v. City of Chicago*, 949 F.3d 358, 363-64 (7th Cir. 2020).

When a prevailing party files a bill of costs, the Clerk under RCFC 54(d) must

either tax or disallow the requested costs.  RCFC 54(d)(1)(C)(iii); *Sonoma Apartment*,

150 Fed. Cl. at 227-28.  Any party may seek review of the Clerk's taxation of costs with

the court, and that review is "on the existing record" unless otherwise ordered by the

court.  RCFC 54(d)(1)(C)(iv).  The court's review of the Clerk's taxation of costs is *de*

*novo*.  *Sonoma Apartment*, 150 Fed. Cl. at 228 (citing cases); *Farmer v. Arabian Am. Oil*

*Co.*, 379 U.S. 227, 233 (1964) (holding that it is the trial judge's responsibility to exercise

discretion "to decide the cost question h[er]self"); *In re Paoli R.R. Yard PCB Litig.*, 221

F.3d 449, 461 (3d Cir. 2000) (holding that "the district court is charged with making a *de*

*novo* review of the clerk's determination of the costs issue").  "[T]he decision whether to

award costs ultimately lies within the sound discretion of the [trial] court."  *Marx v. Gen.*

*Revenue Corp.*, 568 U.S. 371, 377 (2013).

## III.   DISCUSSION

As discussed above, both sets of plaintiffs challenge the Clerk's June 9, 2022

Taxation of Costs on three grounds:  (1) the government's bill of costs was untimely and

the court therefore lacks jurisdiction to consider it; (2) the court should use its discretion

to reduce or eliminate costs for various equitable reasons; and (3) certain specific costs are not reasonable, necessary, or adequately supported.  The court addresses these arguments in order, and then turns to the issue of apportionment.

### A.      Although Premature, the Bill of Costs is Deemed Timely and the Court Has Jurisdiction to Consider It

Both the *Alley's* and the *Colonial* plaintiffs first argue that this court lacks jurisdiction to consider the bill of costs because it is untimely.  *Alley's* Mot. for Review at 3-5; *Colonial* Mot. for Review at 6-11.  RCFC 54(d)(1)(B)(i) provides that a bill of costs must be filed "within 30 days after the date of final judgment, as defined in" the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2)(G).  Subsection 2412(d)(2)(G) defines "final judgment" as one that is "final and not appealable."  In these cases, the judgment as to the nine representative Chrysler plaintiffs was entered on October 2, 2019, but did not become final and unappealable until December 13, 2021, when the Supreme Court denied the plaintiffs' petition for a writ of certiorari.  *See Taylor & Sons, Inc. v. United States*, 142 S. Ct. 709 (2021) (mem.).  Under RCFC 54(d), the bill of costs was therefore due no later than January 12, 2022.  The government filed its bill of costs before this deadline, on April 23, 2021.  However, the bill of costs was premature because it was filed approximately eight months before the final judgment.

According to the plaintiffs, the 30-day window for filing a bill of costs is jurisdictional, and because the government filed outside of this timeframe (and failed to re-file within this timeframe), the bill of costs should be denied.  *Alley's* Mot. for Review at 5; *Colonial* Mot. for Review at 6 & n.2.  The government responds that although the bill of costs was premature, it was not filed late under RCFC 54(d), and, in any case, the

8

30-day filing deadline is not jurisdictional.  Def.'s *Alley's* Resp. at 2-7; Def.'s *Colonial* Resp. at 2-7.  When considering these same arguments, the Clerk in her Taxation of Costs declined to deny the bill of costs on this ground because "[n]one of the cases cited by Plaintiffs stands for the proposition that a bill of costs filed prior to the commencement of RCFC 54(d)(1)(B)'s 30-day filing period should be denied in its entirety."  Taxation of Costs at 3.

The court agrees with the Clerk and concludes that the bill of costs should not be dismissed as untimely and may be deemed timely filed.  As established by the Federal Circuit and this court in similar circumstances, the court may hold a premature request for fees or costs in abeyance and deem the request to have been timely filed during the 30-day period following final judgment.  For example, in the EAJA context, the Federal Circuit has held that "courts generally treat as timely EAJA applications filed even before a judgment becomes final."  *Bly v. Shulkin*, 883 F.3d 1374, 1377 n.1 (Fed. Cir. 2018) (citing *Brewer v. Am. Battle Monuments Comm'n*, 814 F.2d 1564, 1569-70 (Fed. Cir. 1987)).  In *Heger v. United States*, this court deemed timely the government's motion for attorneys' fees filed under EAJA and RCFC 54(d), even though it was filed 31 days before the judgment became final and was thus "premature when judged against the timing specification of RCFC 54(d)."  114 Fed. Cl. 204, 209 (2014).  This court has also relied on the Federal Circuit's decision in *Brewer v. American Battle Monuments Commission* to hold a premature bill of costs filed under RCFC 54(d) in abeyance pending judgment finality, allowing the filing party to proceed with the original bill of costs or file a substitute bill once judgment became final.  *Yankee Atomic Elec. Co. v.*

9

*United States*, No. 98-126C, 2012 WL 2877398, at *1 (Fed. Cl. July 13, 2012).  Under

this precedent, the court concludes that it is appropriate in these cases to deem the

government's premature bill of costs timely filed.

Plaintiffs have not presented a basis to treat the government's premature bill of

costs in these cases differently.  Plaintiffs correctly state that this court has alternatively

rejected premature cost requests by dismissing, striking, or returning them without

prejudice to refiling.  *Alley's* Mot. for Review at 4-5 (citing *Carolina Power & Light Co.

v. United States*, No. 04-37C, 2008 WL 3822617, at *1 (Fed. Cl. Aug. 13, 2008); *Engle v.

United States*, 152 Fed. Cl. 611, 614 (2021); *J.C.N. Constr., Inc. v. United States*, No. 12-

353C, 2013 WL 491013, at *1 (Fed. Cl. Feb. 8, 2013); *Martin Constr., Inc. v. United

States*, Nos. 09-236C et al., 2012 WL 2476794, at *1 (Fed. Cl. May 15, 2012)); *see also

Colonial* Mot. for Review at 7.  However, that is not what happened in these cases.

Instead, the plaintiffs on May 7, 2021 moved to stay briefing on the government's bill of

costs.  In their motion, plaintiffs acknowledged that the government's bill of costs was

premature, but did not request that the court strike, dismiss, or return it.  *See* Pls.' Unopp.

Mot. to Stay Bill of Costs at 1-2.  Instead, plaintiffs asked that the court "stay the date for

Plaintiffs' response[s to the bill of costs] until the Supreme Court has acted and the

Court's judgment becomes final and unappealable." *Id.* at 2.  The court granted

plaintiffs' motion, Order Granting Mot. to Stay Bill of Costs at 2, and plaintiffs only now

challenge the timing of the bill of costs.  In these circumstances, the court concludes that

it is appropriate to deem the bill of costs timely filed.

The court finds plaintiffs' remaining arguments unavailing.  To begin, as the Clerk explained, the plaintiffs cite to no cases where a premature bill of costs has been dismissed with prejudice when it is filed before the RCFC 54(d) deadline.  Taxation of Costs at 2-3.  In the case regarding fees and costs cited by the plaintiffs, *Colonial* Mot. for Review at 7; *Alley's* Mot. for Review at 5 n.23, a request for EAJA fees was dismissed with prejudice because the request was filed after the 30-day deadline, *SAI Indus. Corp. v. United States*, 63 Fed. Cl. 1, 5 (2004).  As discussed above, the government's bill of costs here was filed early, not late.

The *Colonial* plaintiffs also argue that the government disingenuously asks the court to deem the bill of costs timely, inconsistent with previous positions where the government has sought to dismiss a late filing.  *Colonial* Mot. for Review at 7-8.  The *Colonial* plaintiffs also argue that the government is impermissibly seeking equitable tolling for its bill of costs.  *Id.* at 9-11.  Yet, these arguments are not applicable here, because, as explained above and argued by the government, Def.'s *Colonial* Resp. at 6-7, the government's bill of costs in these cases was filed prematurely, not late.

In addition, plaintiffs do not explain how they have been prejudiced by the government's early filing.  The government has requested no additional costs beyond what were requested in its premature bill of costs.  In addition, as the government argues, the stay of the bill of costs briefing – which was requested by the plaintiffs – provided the plaintiffs nearly a year to consider and respond in detail to the government's claimed costs.  Def.'s *Alley's* Resp. at 4-5.

Finally, given the foregoing, the court concludes that it has jurisdiction to review the premature bill of costs.  The government filed its bill of costs before RCFC 54(d)'s 30-day window closed, and precedent from this court and the Federal Circuit supports consideration of a prematurely-filed bill of costs in these circumstances.  In addition, this court has previously found that the RCFC 54(d) deadline is not jurisdictional, *Heger*, 114 Fed. Cl. at 208 (concluding that RCFC 54 "serves purely procedural purposes, and consequently its timing aspects, *i.e.*, specifying the window for filing fee applications, is not jurisdictional"), and plaintiffs cite to no cases holding that the RCFC 54(d) deadline is jurisdictional.

In sum, the court concludes that under these circumstances it is appropriate to deem the government's premature bill of costs as timely filed and exercises jurisdiction to review the bill of costs.

**B.     The Court Will Not Exercise Its Discretion to Reduce or Deny Costs Based on Equitable Factors**

The plaintiffs next argue that the court should exercise its discretion to generally deny costs for several equitable reasons.  The *Alley's* plaintiffs argue that to award costs in these cases would deter parties from raising "important or landmark issues of national import or regarding civil liberties."  *Alley's* Mot. for Review at 7.  The *Alley's* plaintiffs also suggest that the court could deny costs due to "the losing parties' potential indigency or inability to pay."  *Id.* at 6.  The *Colonial* plaintiffs argue that the court should deny costs because of the economic disparity between the government and the plaintiffs, the deterrent effect of awarding costs in these cases, the "bad faith" actions of the

government, and plaintiffs' "reasonable legal expectation that they would succeed." *Colonial* Mot. for Review at 30-33.

As explained above, the language in RCFC 54(d) "reflects the long-standing presumption in favor of awarding costs to prevailing litigants." *First Fed.*, 88 Fed. Cl. at 597. However, the court may exercise its discretion to refuse to tax costs in favor of the prevailing party. *See, e.g.*, *Salem Fin.*, 134 Fed. Cl. at 547; *see also* Taxation of Costs at 2. The burden is on the losing party to show that properly taxed costs are not appropriate. *See Sonoma Apartment*, 150 Fed. Cl. at 228 (holding that if the court determines that costs are taxable, "the burden shifts to the nonprevailing party to demonstrate that the costs are not taxable"); *see also Crosby*, 949 F.3d at 363-64.

Although not yet addressed by the Federal Circuit, other circuits have concluded that the courts may exercise discretion to deny costs on the basis of the equities or circumstances in certain cases. As relevant here, some circuits will withhold costs based on the misconduct of the prevailing party, *see, e.g.*, *Moore v. County of Delaware*, 586 F.3d 219, 221-22 (2d Cir. 2009) (denying costs under Fed. R. App. P. 39(a)); *In re Paoli*, 221 F.3d at 467 (holding that costs may be reduced if "the prevailing party, through bad faith or dilatory tactics, has turned a relatively simple case into a complex morass"), the limited financial resources of the losing parties, *see, e.g.*, *Moore*, 586 F.3d at 221-22; *In re Paoli*, 221 F.3d at 463-64, the public importance of the case, the chilling effect on future similar actions, the complexity or closeness of the issues, the good faith of the losing party, or the economic disparity between the parties, *see, e.g.*, *Moore*, 586 F.3d at 221; *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir.

13

2003); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014).

Some circuits have held, however, that the complexity or closeness of the issues, the

good faith of the losing party, or the economic disparity of parties are not relevant to a

cost award. *See, e.g.*, *In re Paoli*, 221 F.3d at 462-68 (holding that the district court

should not consider these factors); *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th

Cir. 2000) ("[W]hen awarding costs a district court should not consider the relative

wealth of the parties."); *Moore v. CITGO Refin. & Chems. Co.*, 735 F.3d 309, 319-20

(5th Cir. 2013) (joining four circuits in rejecting the "comparative wealth of the parties"

as a basis for reducing a cost award); *see also First Fed.*, 88 Fed. Cl. at 598 ("[T]he

length and difficulty of a case does not by itself provide grounds for denying costs."

(citing *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728 (6th Cir. 1986)).

Here, even if the court considers all of the above factors relevant, the court

concludes that plaintiffs have not shown that the court should exercise its discretion to

generally deny costs.  First, the *Alley's* plaintiffs suggest that costs should be reduced

based on the plaintiffs' limited financial means, noting that the plaintiffs testified at trial

that they were "financially crippled by loss of their franchised dealerships."  *Alley's* Mot.

for Review at 7.  However, the *Alley's* plaintiffs do not present any evidence regarding

their inability to pay costs now.  Some evidence of limited financial means has been

required by other circuits.  For instance, in the Third Circuit case cited by the *Alley's*

plaintiffs, the losing parties submitted affidavits regarding their limited means.  *In re*

*Paoli*, 221 F.3d at 460.  Other circuits require "substantial documentation" of indigency

before reducing costs.  *Chapman*, 229 F.3d at 1039.  Here, the court has no current

14

evidence on which to evaluate the plaintiffs' suggestion that costs should be reduced based on their inability to pay.

Similarly, the *Colonial* plaintiffs argue that the parties' wealth disparity should permit this court to deny costs, but do not present any evidence regarding the *Colonial* plaintiffs' inability to pay, stating only that they were "put out of business."  *Colonial* Mot. for Review at 30.  More is needed for the court to exercise its discretion to reduce costs, particularly because a wealth disparity between the plaintiffs and the United States will exist in every case filed in this court.  Def.'s *Colonial* Resp. at 28; *see also First Fed.*, 88 Fed. Cl. at 598 ("Even a large disparity in wealth between the two sides does not necessarily overcome the presumption that costs will be taxed in favor of the prevailing party.").

Both the *Alley's* and the *Colonial* plaintiffs also contend that the court should deny or limit costs because of the public importance of these cases and the "chilling effect" imposing costs in these cases will have on future, similar cases.  *Alley's* Mot. for Review at 6-7; *Colonial* Mot. for Review at 30.  The court declines to do so.  Plaintiffs provide limited analysis and evidence in support of this argument, and other circuits have relied on more substantial evidence.  For example, the *Colonial* plaintiffs cite *Escriba v. Foster Poultry Farms, Inc.*, *Colonial* Mot. for Review at 30, where the district court, in reducing costs, relied on statements from relevant federal and state officials regarding the public importance of the civil rights issues involved in that case.  743 F.3d at 1248.  Plaintiffs here do not present similar evidence or explain the broad import of the issues presented in these cases on future civil rights litigants.  The *Colonial* plaintiffs point to this court's

statement, in the context of scheduling closing arguments, that the court would undergo a "thorough" review because the issues in these cases would be "precedent-setting." *Colonial* Mot. for Review at 30 (citing Trial Tr. at 4,798, ECF No. 488). But the court concludes that more is needed to overcome the presumption that costs will be awarded. This is an unusual Fifth Amendment takings case, which arises in the unique context of the automobile industry bankruptcies during the "Great Recession," *Colonial Chevrolet*, 145 Fed. Cl. at 245, and where the Federal Circuit's decision upholding this court's judgment on appeal turned on specific conclusions regarding whether the plaintiffs' franchise agreements would have had value but for the government's actions, *Taylor & Sons*, 841 F. App'x at 206.

The *Colonial* plaintiffs suggest that some General Motors plaintiffs—whose similar takings case is proceeding separately from the Chrysler plaintiffs—might not go forward with their claims if costs are taxed against the representative Chrysler plaintiffs. *Colonial* Mot. for Review at 30. Before the Clerk of Court, the *Colonial* plaintiffs submitted the affidavit of a General Motors plaintiff, who stated that if the court imposed costs on the Chrysler plaintiffs now, many General Motors plaintiffs would "drop[] out of the[ir] case." Aff. of David Smith ¶ 8, ECF No. 551-1. While sympathetic to the plaintiffs' circumstances, *see Colonial Chevrolet*, 145 Fed. Cl. at 249, the court concludes that the General Motors plaintiffs' potential decisions regarding whether to proceed is not a basis to deny costs in the Chrysler cases. In every case, each party risks paying costs to the prevailing party. The court does not doubt that the outcome of the Chrysler cases is of particular interest to the General Motors plaintiffs in assessing this

16

risk.  However, the plaintiffs have not shown that the imposition of costs in these cases will have a broad "chilling effect" such that costs should be denied.

The *Colonial* plaintiffs also argue that the government's "litigation strategy involved bad faith tactics," citing to certain arguments and an expert witness put forth by the government.  *Colonial* Mot. for Review at 30-31.  However, the court agrees with the government that the *Colonial* plaintiffs have not provided sufficient evidence of "bad faith" conduct on the part of the government.  Def.'s *Colonial* Resp. at 28-29.  The plaintiffs did not contemporaneously seek sanctions or relief based on this alleged misconduct.  *Id.* at 28.  In addition, the *Colonial* plaintiffs present no evidence equivalent to the "bad faith" tactics that have supported a denial of costs in other cases.  For example, in *Moore v. County of Delaware*, 586 F.3d at 222, the Second Circuit denied an award of costs due, in part, to "government misconduct by appellants . . . significant enough to . . . lead a panel of this Court to find a constitutional violation."  The *Colonial* plaintiffs have not alleged similar misconduct.  The *Colonial* plaintiffs have not shown that the government's alleged misconduct "turned a relatively simple case into a complex morass," as suggested by the Third Circuit.  *In re Paoli*, 221 F.3d at 467.  Nor have the *Colonial* plaintiffs alleged previously-imposed sanctions based on discovery abuse that have justified reducing costs in other cases.  *See Edwards v. 4JLJ, LLC*, 976 F.3d 463, 466-67 (5th Cir. 2020) (upholding reduction of costs based on "facts in the record suggesting that [the prevailing party] had engaged in evasive discovery practices" that were sanctioned).

Finally, the court rejects the *Colonial* plaintiffs' argument that costs should not be taxed against them because they "had every reasonable legal expectation they would succeed." *Colonial* Mot. for Review at 32-33.  "[A] majority" of circuits have held that a "good faith" belief in a losing parties' claims cannot defeat the presumption in favor of awarding costs.  *In re Paoli*, 221 F.3d at 467 ("If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d)(1) would have little substance remaining . . . ." (quotation omitted)).  In support of this argument, the *Colonial* plaintiffs generally express their disagreement with this court's and the Federal Circuit's holdings.  *Colonial* Mot. for Review at 32-33 (arguing, for example, that "the decisions in this case reflect the statistical hostility of the Federal Circuit towards Takings Clause claims").  However, disagreement with the outcome of these cases is not sufficient to justify denying costs.

In sum, the court will not exercise its discretion to generally reduce costs based on the equitable considerations raised by the plaintiffs.  The court now turns to the plaintiffs' specific cost objections.

## C.    The Court Grants the Motions for Review as to Some Specific Costs

As discussed above, the government filed a bill of costs in the amount of $183,463.08.  Bill of Costs at 2.  The requested costs were separated into four categories: (1) fees for the reporter for trial or hearing transcripts; (2) witness expenses; (3) costs for duplication; and (4) costs for deposition transcripts.  *Id.*; Taxation of Costs at 20.  The Clerk of Court reduced this amount by $37,843.74, and taxed $145,619.34 against the plaintiffs.  Taxation of Costs at 20.

The government does not challenge the Clerk's Taxation of Costs.  The *Alley's* plaintiffs now seek a further reduction of $49,606.13.  *Alley's* Mot. for Review at 3.  The *Colonial* plaintiffs also seek further reductions in each category.  *Colonial* Mot. for Review at 12-26.

Under RCFC 54(d)(1), costs "should be allowed to the prevailing party to the extent permitted by law."  The four categories of costs sought by the government are permitted by law.  *See* 28 U.S.C. § 1920(2)-(4); RCFC, App. Form 4.  However, in addition to being allowable, requested costs must be necessary, reasonable, and adequately supported.  *Sonoma Apartment*, 150 Fed. Cl. at 228; *First Fed.*, 88 Fed. Cl. at 597; *Standard Commc'ns*, 106 Fed. Cl. at 175.  The court now applies this standard to each cost category challenged by the plaintiffs.

1.   **The Clerk Properly Taxed the Fees of the Reporter for Hearing, Status Conference, and Trial Transcripts**

The *Alley's* and *Colonial* plaintiffs first object to certain fees for trial and hearing transcripts requested by the government.  The Clerk taxed $29,705.17 for trial and hearing transcript costs, disallowing some expedited delivery costs and real-time transcription costs.  Taxation of Costs at 5-6, 20.  The *Alley's* plaintiffs now object to $3,796.52 of the costs for transcripts for hearings and status conferences that predate the trial because, according to the *Alley's* plaintiffs, the government has not demonstrated why these costs are reasonable and necessary.  *Alley's* Mot. for Review at 9, Ex. 1-A. The *Alley's* plaintiffs also object to $10,826 of trial transcript costs, which includes costs for real-time transcription services, because the government has not explained why real-time transcripts were necessary.  *Alley's* Mot. for Review at 10-11, Ex. 1-A.

The *Colonial* plaintiffs raise similar objections.  The *Colonial* plaintiffs object to costs for transcripts related to pretrial hearings on the government's motions to dismiss because these transcripts were never used in any trial or appellate proceeding.  *Colonial* Mot. for Review at 13.  The *Colonial* plaintiffs also contest the reasonableness and necessity of transcript costs for a pretrial class certification hearing and four pretrial status conferences.  *Id.* at 14-15.  The *Colonial* plaintiffs generally object to the taxation of costs for real-time and daily trial transcripts, multiple copies of transcripts, and premium delivery costs.  *Id.* at 18-19.

In response, the government argues that the costs it seeks to tax in this category are included in RCFC Form 4 and are "largely self-explanatory."  Def.'s *Alley's* Resp. at 10; Def.'s *Colonial* Resp. at 8.  The government argues that the transcript costs for the pretrial hearings and status conferences all fit into the category of costs that may be taxed as a matter of course, and were necessary for use in these cases due to the substantive and procedural issues discussed at those proceedings.  Def.'s *Alley's* Resp. at 11-13; Def.'s *Colonial* Resp. at 9-14.  The government also argues that given the size and complexity of the case, the government's use of real-time trial transcription was reasonable, necessary, and adequately supported by the submitted invoices.  Def.'s *Alley's* Resp. at 13-15; Def.'s *Colonial* Resp. at 16-17.

The court may properly tax the costs of transcripts of court proceedings when "(1) the transcripts are necessarily obtained for use in the case, and (2) the cost is reasonable."  *First Fed.*, 88 Fed. Cl. at 599 (quoting *ACE Constructors, Inc. v. United States*, 81 Fed. Cl. 161, 170 (2008)); 28 U.S.C. § 1920(2).  Costs associated with obtaining expedited

transcripts may be taxed "if the case is complex and the transcripts proved invaluable to both the counsel and the court." *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996); *Asphalt Supply & Serv., Inc. v. United States*, 75 Fed. Cl. 598, 602-03 (2007) ("Assessment of the premium delivery charges of daily transcripts must be for necessity, not just for the convenience of counsel, for those charges to be taxable."). Similarly, real-time transcription services used during trial proceedings have been held to be taxable where the court determines that they are "extremely useful." *First Fed.*, 88 Fed. Cl. at 600. However, real-time services have been disallowed where unnecessary for the government to further its ability to try a case. *Salem Fin.*, 134 Fed. Cl. at 550.

After a careful review the parties' submissions, the court concludes that the Clerk properly taxed costs for the hearing, status conference, and trial transcripts. Beginning with the pretrial hearing and status conference transcripts, the government has adequately documented and justified the reasonableness and necessity of these transcripts, some at an expedited rate, given the substance and timing of these proceedings. *See* Def.'s *Alley's* Resp. at 10-13; Def.'s *Colonial* Resp. at 9-14. For example, the government has adequately explained that the transcript of the March 31 and April 1, 2016 status conference was reasonable because this status conference "was a two-day event conducted to address the substantive and procedural issues set forth by the Court," including the *Colonial* plaintiffs' motion for class certification, scheduling deadlines, a motion to dismiss filed by the government, legal issues regarding liability, and discovery. Def.'s *Alley's* Resp. at 11. It is reasonable, given the issues discussed, that the

government obtained a copy of this transcript.  As another example, the expedited

transcript for the pretrial conference held on March 28, 2019 was properly taxed by the

Clerk.  *Id.* at 12-13.  This status conference discussed motions in limine and trial exhibits,

and plaintiffs themselves ordered this transcript on an expedited basis.  *Id.*  The

government has provided similar detailed justifications for the other requested transcripts.

Accordingly, after review of the government's bill of costs and the parties' submissions,

the court concludes that the pretrial hearing and status conference transcript costs

requested by the government were reasonable and necessary for the litigation of these

cases, and were thus properly taxed by the Clerk.  *See First Fed.*, 88 Fed. Cl. at 599-600.

The court further concludes that the Clerk properly taxed costs associated with the

trial transcripts, including real-time transcription costs.  The court recognizes that other

judges of this court have disallowed real-time services in the context of deposition

testimony.  *Salem Fin.*, 134 Fed. Cl. at 550.  However, the court concludes that the real-

time and daily rough transcript costs for the trial in these cases were necessary and

reasonable, not just convenient, particularly given the length of the trial, the complexity

of these cases, and the need for counsel to determine whether exhibits had been properly

admitted with the court each day.  *See id.* at 547 (finding that daily trial transcripts were

"necessary to ensure the efficient and timely presentation of the case"); *First Fed.*, 88

Fed. Cl. at 600 (finding "real-time transcription services to be extremely useful during the

trial"); Def.'s *Colonial* Resp. at 16.  For these reasons, the court disagrees with the

plaintiffs' argument that simply because some members of the government's trial team

could have taken notes that these costs are not justified.  *Colonial* Mot. for Review at 19.

The court therefore denies the plaintiffs' motions for review based on their objections to the fees for pre-trial hearing, status conference, and trial transcripts.

### 2.    The Court Disallows Certain Witness Expenses as Unsupported

The *Alley's* and *Colonial* plaintiffs next object to certain fact and expert witness expenses. The government sought to tax $28,642.79 in witness expenses, Bill of Costs at 2, which the Clerk reduced to $18,590.97—$8,887.54 for fact witness expenses and $9,703.43 for expert witness expenses, Taxation of Costs at 11-12. The *Alley's* plaintiffs object to $15,463.64 of these remaining costs as unnecessary, unreasonable, and inadequately supported. *Alley's* Mot. for Review at 11-16, Ex. 2-A. Specifically, the *Alley's* plaintiffs object to statutory attendance fees attributable to days in which witnesses were not testifying, to certain hotel and transportation expenses as exorbitant because they were booked very close to trial, to expert expenses that lacked documentation regarding how and on what the claimed cost were incurred, and to one witness's travel for preparation for a Rule 30(b)(6) deposition. *Id.* The *Colonial* plaintiffs raise similar objections. *See Colonial* Mot. for Review at 19-21.

In response, the government argues that 18 U.S.C. § 1821(b) requires that attendance fees be paid for witness travel days, and that all such fees are therefore taxable. Def.'s *Alley's* Resp. at 16-17. The government further contends that it could not have lowered its witnesses' travel costs by booking them further in advance because of uncertainties surrounding the trial testimony schedule, and that the elevated costs were due to the fact that the trial occurred around the same time as the 2019 Cherry Blossom Festival. *Id.* at 18-23. The government argues that its expert witnesses' invoices, listing

totals for travel expenses, are sufficient. *Id.* at 23.  Finally, the government argues that its Rule 30(b)(6) witness's travel for deposition preparation was necessary because of the amounts of information on which that witness would testify. *Id.* at 23-24.

The Clerk of Court may tax costs for "fees and disbursements for . . . witnesses," 28 U.S.C. § 1920(3), including travel fees, *id.* § 1821(a), (c), $40 daily statutory attendance fees, *id.* § 1821(b), and subsistence expenses, *id.* § 1821(d).  Under § 1920(3) and § 1821(c)(4), "a witness's 'normal travel expenses' are taxable as costs if the witness is attending a court proceeding or having his deposition taken." *Otay Mesa Prop., L.P. v. United States*, 127 Fed. Cl. 146, 150 (2016).  The court "has the discretion to tax witness travel expenses so long as the amount awarded does not exceed the amount allowed by the applicable statute." *Id.*

Beginning first with the fact witness expenses, after review of the parties' submissions, the court concludes that the Clerk correctly taxed $8,887.54.  Taxation of Costs at 11.  As an initial matter, the court agrees with the government that 28 U.S.C. § 1821(b) permits statutory attendance fees for not only a witness's attendance at a proceeding, but also "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." *Id.*; *see, e.g.*, *United States v. Bayer Corp.*, No. 07-0001, 2015 WL 12698451, at *7 (D.N.J. Dec. 28, 2015) ("Section 1821(b) allows the $40 attendance fee for the days spent going to and returning from the place of attendance, in addition to the days spent actually attending a deposition or trial."); *David v. Sirius Comput. Sols., Inc.*, No. 11-cv-02030, 2014 WL 10896989, at *3-4 (D. Col. Mar. 7, 2014) (holding that a

witness was entitled to travel days under § 1821(b)).  Therefore, contrary to plaintiffs' contentions, the Clerk correctly taxed costs related to attendance fees for travel days that book-ended certain witnesses' attendance.  The government has adequately documented and supported the date of each witness's travel and attendance at trial.  *See* Def.'s *Alley's* Resp. at 17.

The court further concludes that the remaining hotel and travel costs are also allowable, necessary, reasonable, and adequately supported.  The plaintiffs object to these costs as unnecessarily high because they were booked "last minute."  *Alley's* Mot. for Review at 12-13; *Colonial* Mot. for Review at 20.  However, the government has adequately explained that the timing of these bookings was due to the uncertainties surrounding the trial schedule, which made it impossible to save costs by booking in advance.  Def.'s *Alley's* Resp. at 18-19; Def.'s *Colonial* Resp. at 20-21.  Although the plaintiffs argue that hotel expenses "were above the Government's rates," *Alley's* Mot. for Review at 13; *Colonial* Mot. for Review at 20, the Clerk reduced hotel costs to the per diem rate, Taxation of Costs at 10-11.  The plaintiffs also argue that certain fact witnesses stayed far from the courthouse resulting in high transportation costs, *Alley's* Mot. for Review at 13, *Colonial* Mot. for Review at 20, but the government has explained that hotel bookings were particularly difficult because the trial took place around the same time as the Cherry Blossom Festival, and the government has provided a detailed account of how and why its fact witnesses' transportation occurred.  Def.'s *Alley's* Resp. at 19-23; Def.'s *Colonial* Resp. at 20-21.  The *Alley's* plaintiffs also argue that one of the government's witnesses, James Lambright, stayed at an unknown hotel and for longer

than required, *Alley's* Mot. for Review at 13, but the government has provided that information and has explained Mr. Lambright's length of stay, Def.'s *Alley's* Resp. at 17, 20.  In sum, the court finds that the government has explained and supported the taxed costs for its fact witnesses as necessary and reasonable.

However, the court concludes that the government has failed to adequately document its expert witness expenses.  As the Clerk noted, the "documentation that has been submitted by the government in support of its . . . expert witness costs is devoid of any detail as to how, and on what, these costs were incurred."  Taxation of Costs at 12.  The invoiced amounts do contain aggregated amounts for travel expenses.  *See* Bill of Costs, Appx124-34.  However, as the Clerk explained, "the invoices the government has provided do not make clear that the invoiced amounts only include costs that are taxable under RCFC 54(d) and 28 U.S.C. § 1920," and the Clerk could not determine whether the travel expenses "exceed the amounts permitted under 28 U.S.C. § 1821."  Taxation of Costs at 12.  Because of this, the Clerk reduced the taxable amount of expert witness costs by 50%, or from $19,406.85 as requested to $9,703.43 taxed.  *Id.*

The court joins in the Clerk's concerns, but further agrees with the plaintiffs that expert witness expenses should not be taxed at all, due to the deficiencies in the government's documentation.  The government has produced only generic invoices for the travel expenses of its experts.  For example, for expert Andrew Carron, the government seeks $4,114.61 in travel expenses, but the invoice submitted reflects only an aggregate sum for "Travel, Meals & Lodging."  Bill of Costs, Appx124-26; *see also id.* at Appx128 (for Robert Gerber, $1,074.74 for "disbursements incident to DC Trip for Trial

Testimony"), Appx130 (for Donald MacKenzie, $9,742.73 for "Reimbursable Expenses"), Appx131-32 (for Jonathan Neuberger, $1,722.57 for "Expenses" related to "Travel for Depo prep"), Appx133 (for Jonathan Neuberger, $2,752.20 for "Trip from San Francisco to DC for 30b6 deposition").  As the prevailing party, it is the government's "obligation to provide documentation of the costs it requests" to allow the Clerk or this court to find that the requested cost is allowed by the applicable statutes, is a necessary litigation expense, and is reasonable.  *Metro. Van & Storage, Inc. v. United States*, 101 Fed. Cl. 173, 202 (2011); *Otay Mesa*, 127 Fed. Cl. at 150.  While the government asserts that there is "no reason to doubt" that the aggregate sums invoiced by its experts were incurred as taxable travel expenses, Def.'s *Alley's* Resp. at 23, the court agrees with the Clerk that the generic invoices submitted by the government do not permit either the Clerk or the court to properly evaluate whether the expenses were reasonable, necessary, or allowable.  *See Asphalt Supply*, 75 Fed. Cl. at 603 (denying costs supported by "invoices without explanation" because "the court cannot determine which is an allowable, necessary, and reasonable cost in the proper amount").  Therefore, the court will exercise its discretion to disallow the remaining $9,703.43 in expert witness expenses.  The court grants in part plaintiffs' motions for review as to these costs, and taxes $8,887.54 for witness expenses.

### 3.    The Court Disallows Certain Duplication Costs

The *Alley's* and the *Colonial* plaintiffs next object to certain duplication costs. The government requested $58,123.93 in duplication costs, Bill of Costs at 2, which the Clerk reduced to $43,837.80, Taxation of Costs at 20.  Following this reduction, the

categories of duplication costs taxed by the Clerk include $19,864.12 for witness binders for use at trial, $7,616.38 for "witness preparation binders," $4,937.40 for two sets of admitted exhibits at trial to allow two attorneys to prepare for closing statements, $3,074.24 for deposition binders for use in the discovery phase of the case, $351.36 for eight copies of opening and closing statement slides that were provided to counsel on both sides, the court, and the law clerk, and $7,994.30 for one set of exhibits the government produced at trial.  Taxation of Costs at 15-17.  These costs included in-house and external vendor copying.  *Id.* at 12.

The *Alley's* plaintiffs object to all of these costs, arguing that the government has failed to explain why it was reasonable and necessary to incur costs for these materials, and, for external printing costs, why it was reasonable and necessary to outsource the printing.  *Alley's* Mot. for Review at 17-18.  The *Alley's* plaintiffs also argue that the government should not recover costs for office supplies, like custom tabs, redwelds, and manilla folders associated with its trial binders.  *Id.* at 18.  The *Alley's* plaintiffs finally object to copies for witness preparation binders and eight copies of opening and closing statement slides.  *Id.* at 18-19; *see also id.*, Ex. 3-A (listing challenged copying costs).  The *Colonial* plaintiffs also argue that the government has failed to provide information adequate to justify its duplication costs.  *Colonial* Mot. for Review at 23-26.

The court may tax costs for the duplication of papers "necessarily obtained for use in the case," if the costs are reasonable.  28 U.S.C. § 1920(4); *Otay Mesa*, 127 Fed. Cl. at 151; *Standard Commc'ns*, 106 Fed. Cl. at 175-76.  Here, the court concludes that the government has provided adequate documentation and justification for the duplication

costs allowed by the Clerk, with the exception of copying costs for "witness preparation binders."

Contrary to plaintiffs' argument, the government has shown that its in-house printing was performed at the same rate as its outsourced printing, and, therefore, the fact that the government outsourced some of its printing does not provide a basis to reduce costs. Def.'s *Alley's* Resp. at 25 (comparing Bill of Costs, Appx137 (invoices from vendor) with *id.*, Appx179 (in house printing costs summarized)). The government has also explained the necessity of the duplication costs for its witness binders used at trial, witness deposition binders, admitted exhibit sets, opening and closing statement slides, binders for exhibits produced at trial, and for the costs associated with witness binders used at trial, such as custom tabs and labeled manila folders. Def.'s *Alley's* Resp. at 24-27; Def.'s *Colonial* Resp. at 23-26. For example, as the government explains, custom tabs and other organizational supplies were necessary at trial, based on the court's order that the parties produce witness binders with each exhibit used in sequential order. Def.'s *Alley's* Resp. at 26-27 (citing Preliminary Pretrial Order, ECF No. 384). The government also explains that two copies of each listed witness deposition binder were necessary because, as is standard practice, one binder was used by the attorney and the other used by the witness. *Id.* at 26 n.12. Based on the government's documentation and explanations, the court agrees with the Clerk that these costs are properly taxable, necessary, and reasonable, particularly given the length and complexity of these cases, the number of witnesses and exhibits, and the court's pretrial orders.

However, in addition to the reductions made by the Clerk, the court will disallow $7,616.38 for the duplication of "witness preparation binders." *See* Taxation of Costs at 15. In the government's summary of its duplication costs, these binders are described only as "Witness Prep binders," with no details about the contents of the binders or, in some instances, which witness was using the binders. Bill of Costs, Appx136, Appx179. The government argues that these binders were necessary, in addition to the binders used at trial, as a "standard part of litigation" to prepare for the examination of witnesses at trial, and represents that each binder was used "for different witnesses." Def.'s *Alley's* Resp. at 25-26. However, the court finds this explanation and the lack of specifics in the documentation inadequate to demonstrate that the costs incurred to produce these binders were necessary, and not just for convenience. *See Standard Commc'ns*, 106 Fed. Cl. at 176 ("Copies that are for the convenience of the attorneys . . . are not taxable."). Accordingly, the court grants in part plaintiffs' motions for review as to duplication costs, and taxes $36,221.42 for duplication costs.

### 4.    The Clerk Properly Taxed Costs for Deposition Transcripts

Finally, the plaintiffs object to costs incident to taking depositions. The government sought $63,385.49 for deposition transcript and recording charges. Bill of Costs at 2. The Clerk taxed costs in the amount of $53,485.40 for "the cost of a single original transcript for each deposition invoiced," including attendance fees, processing fees, and exhibits. Taxation of Costs at 18-19. The Clerk disallowed $9,900.09 in costs for "anything other than an original certified transcript, a black-and-white or color

deposition exhibit, an attendance fee, or a processing fee," such as expedited delivery or multiple copies.  *Id.*

The *Alley's* plaintiffs object to $507.50 of the taxed amount of costs incident to depositions because the amount includes color exhibits.  *Alley's* Mot. for Review at 20, Ex. 4-A.  The *Colonial* plaintiffs argue that they should not be taxed for costs associated with the *Alley's* plaintiffs or with witnesses the government controlled, and object to the variable per-page rate reflected in the government's transcription invoices.  *Colonial* Mot. for Review at 15-18.

Under 28 U.S.C. § 1920(2), costs for deposition transcripts may be awarded if they were necessarily obtained for use in the case.  *Manildra*, 76 F.3d at 1184.  Even if not used at trial, deposition transcripts may be considered reasonably necessary if they appear reasonably necessary at the time they were taken.  *Id.*; *Asphalt Supply*, 75 Fed. Cl. at 603; *First Fed.*, 88 Fed. Cl. at 601 ("Costs of depositions of record that are reasonably necessary to the case are customarily taxed in favor of the prevailing party.").  In these cases, the government has submitted a spreadsheet and invoices in support of its deposition-related expenses, which includes the name of the witness, their affiliation, such as "Model Plaintiff" or "Government Expert," and additional descriptive notes.  Bill of Costs, Appx181-182.

Based on a review of this documentation and the parties' submissions, the court finds that the deposition costs requested by the government and allowed by the Clerk are reasonable and that the deposition transcripts were necessarily obtained for use in the case.  *Manildra*, 76 F.3d at 1184.  Moreover, contrary to the *Alley's* plaintiffs' argument

31

and based on the court's knowledge of these cases, the court has no reason to doubt the government's assertion that certain exhibits used in the depositions were "much easier to follow in color," and would be rendered unreadable if presented in black and white. Def.'s *Alley's* Resp. at 28-29.  The court therefore agrees with the Clerk that the color exhibits were properly taxable.

The court also rejects the *Colonial* plaintiffs' general objection to the variable per-page rate reflected in the government's transcription invoices.  *Colonial* Mot. for Review at 18.  "In general, transcript and reporter fees supported by itemized invoices from the reporting company speak to the reasonableness of those charges."  *Salem Fin.*, 134 Fed. Cl. at 547.  The government has submitted invoices in support of its deposition transcript costs, and the fact that some invoices charged higher rates than others does not render these costs unreasonable.  As the government argues, Def.'s *Colonial* Resp. at 15, the government "had every incentive to exercise control over the work of its counsel and to monitor closely the cost of the litigation," *First Fed.*, 88 Fed. Cl. at 585.  The court therefore concludes that the variable rates do not justify disallowing the government's claimed costs.  Therefore, the court denies plaintiffs' motions for review as to costs incident to depositions.

Finally, to the extent that the *Colonial* plaintiffs argue that they should not be taxed for any duplication or transcript costs unrelated to their own theories of liability, *see, e.g.*, *Colonial* Mot. for Review at 14-18, 24-26, these arguments are better characterized as arguments in support of the apportionment of costs between the *Alley's* and *Colonial* plaintiffs, not arguments regarding whether the requested costs were

properly taxable.  The court addresses those arguments when it discusses apportionment below.

In sum, the court concludes that the Clerk properly taxed costs against the plaintiffs, except for (1) $9,703.43 in costs associated with the government's expert witnesses, which were inadequately documented, and (2) $7,616.38 in costs associated with copying "witness preparation binders."  The court thus disallows an additional $17,319.81, for total taxed costs in the amount of $128,299.53.

### D.    Costs are Apportioned Between the *Alley's* and *Colonial* Plaintiffs

The court finally turns to the plaintiffs' arguments regarding apportionment of costs.  The *Colonial* plaintiffs argue that costs should be apportioned between the two sets of plaintiffs, rather than apply jointly and severally.  *Colonial* Mot. for Review at 34-35.  Specifically, the *Colonial* plaintiffs argue that they should be assessed 22% of "shared costs with *Alley's*"[3] because the two *Colonial* plaintiffs represented only 22% of the nine representative Chrysler plaintiffs, and the two lawsuits "relied upon distinctly different fact claims and legal theories."  *Id.* at 34-35.  The *Alley's* plaintiffs do not comment on apportionment.[4]  The Clerk in her Taxation of Costs declined to apportion costs because the *Colonial* plaintiffs failed to show in their submissions before the Clerk

---

[3] The *Colonial* plaintiffs also suggest that they could be assessed certain costs based on actual cost shares.  *See Colonial* Mot. for Review at 16-17, Exs., ECF No. 554-2.

[4] The *Alley's* plaintiffs do argue that it is unfair to apply all costs to the nine representative plaintiffs only.  *Alley's* Mot. for Review at 7.  To the extent that the *Alley's* plaintiffs argue that the use of representative plaintiffs, as agreed by the parties, supports a reduction in a cost award, the court disagrees.  *C.f. White v. Sundstrand Corp.*, 256 F.3d 580, 585-87 (7th Cir. 2001) (holding in a class action that the fact that representative plaintiffs may bear the costs does not mean the cost burden should shift to the prevailing party).  Moreover, the final judgment at issue in these motions for review applies only to the nine representative plaintiffs.

that the *Alley's* plaintiffs were disproportionately responsible for the costs taxed in favor of the government.  Taxation of Costs at 20.

The Federal Circuit has not addressed apportionment of costs under this court's rules.  However, in interpreting the Federal Rules of Civil Procedure, the Federal Circuit has held that "[a]s a general rule," a trial court has "discretion to apportion payment of jointly incurred costs among the losing parties or to invoke the default rule that the losing parties are jointly and severally liable for costs."  *Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc*., 569 F.3d 1353, 1357 (Fed. Cir. 2009) (footnote omitted).  At least one circuit has held that the burden is on the losing parties to introduce evidence and persuade the court that the costs should be apportioned.  *See In re Paoli*, 221 F.3d at 469.

Several circuit courts agree that "[t]he presumptive rule is joint and several liability unless it is clear that one or more of the losing parties is responsible for a disproportionate share of the costs."  *Anderson v. Griffin*, 397 F.3d 515, 522-23 (7th Cir. 2005) (citing cases from the Third, Seventh, and Eighth Circuits).  For example, joint and several liability has been held to be improper where it is shown that certain individual plaintiffs' claims are completely distinct and account for only a small amount of the prevailing party's incurred costs.  *In re Paoli*, 221 F.3d at 471.

On the other hand, the circuit courts have recognized that the "general similarity" of losing plaintiffs' "claims and costs incurred in response thereto" may demonstrate that the default rule of joint and several liability is warranted.  *In re Paoli*, 221 F.3d at 470. The Eighth Circuit has held that the default rule of joint and several liability is appropriate where the losing parties share the same counsel, share common theories of

34

liability, seek the same discovery, or seek the same equitable relief in addition to damages. *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002). Joint and several liability may also be appropriate where "it cannot be said that any individual plaintiff generated more costs than others." *Id.* (citing cases from the Seventh and Fifth Circuits); *White v. Sundstrand Corp.*, 256 F.3d 580, 585-87 (7th Cir. 2001) (holding the losing representative plaintiffs of a class action jointly and severally liable for costs where plaintiffs failed to show that "a subset of their number was responsible for a discrete portion of defendants' costs").

At the outset, the court notes that the *Colonial* plaintiffs have provided the court with more detailed arguments and exhibits on apportionment than were submitted to the Clerk.[5]  *Compare Colonial* Resp. to Bill of Costs at 30-31, ECF No. 533, *with Colonial* Mot. for Review at 34-35; *id.*, Exs., ECF No. 554-2.  The *Colonial* plaintiffs now explain that, in addition to making up 22% of the representative plaintiffs, they "called only five witnesses compared to the 20 witnesses called by *All[e]y's*" and that the "issues raised by *All[e]y's* caused the Government to call 16 witnesses that were irrelevant to *Colonial* whereas the total number of witnesses called by the Government to contest" shared or *Colonial*-exclusive issues "was only eight."  *Colonial* Mot. for Review at 34-35.  The *Colonial* plaintiffs attach new exhibits to their motion for review explaining this

---

[5] The court's review of the Clerk's Taxation of Costs is made on the existing record unless the court orders otherwise.  RCFC 54(d)(1)(C)(iv).  Because the *Colonial* plaintiffs' made the same general arguments before the Clerk, and because the court's review is *de novo*, the court will consider these more detailed arguments and exhibits.  *See In re Paoli*, 221 F.3d at 461-62 (interpreting Fed. R. Civ. P. 54(d) to permit review of additional evidence).

breakdown in witnesses, which they did not present to the Clerk.  *Id.*, Exs.  The *Colonial* plaintiffs also for the first time mention that the *Alley's* and *Colonial* plaintiffs have "entered into a cost sharing agreement which explicitly recognized that the *Colonial* share of costs should be 21%."  *Id.* at 35.

Neither the *Alley's* plaintiffs nor the government specifically challenge the *Colonial* plaintiffs' exhibits, and the government agrees that "some theories of recovery and damages may have varied between the *Alley's* and *Colonial* plaintiffs."  Def.'s *Colonial* Resp. at 29.  However, the government argues that its awarded costs should not be apportioned, because all of the costs "are for activities that, at the time they were undertaken, had actual or potential application to both the *Alley's* and *Colonial* plaintiffs," and that the government's "defenses applied to all plaintiffs, as did the Court's dispositive findings . . . ."  *Id.*

After carefully considering the parties' arguments, the court will exercise its discretion to apportion all taxed costs, as described above and set forth below, *infra* Part IV, between the *Alley's* plaintiffs and the *Colonial* plaintiffs.  The *Colonial* plaintiffs are assessed 22% of all taxed costs, and the *Alley's* plaintiffs 78%.  The court recognizes that both sets of representative plaintiffs asserted Fifth Amendment causes of action based on similar, but not identical, factual circumstances.  In addition, the government's defenses ultimately applied to both sets of plaintiffs, and the court's findings based on those defenses resulted in judgment against all representative plaintiffs.  Because the *Colonial* plaintiffs' claims were not completely distinct, the court will not, as the *Colonial* plaintiffs suggest, assign specific transcript or copying costs to the *Colonial* or the *Alley's*

plaintiffs. *See Colonial* Mot. for Review, Exs.; *see also In re Paoli*, 221 F.3d at 471 (disaggregating and apportioning costs where a small subset of losing plaintiffs asserted distinct claims).

However, given the new information provided by the *Colonial* plaintiffs that was not available to the Clerk, the court concludes that it is equitable to apportion costs between the two sets of plaintiffs by the percentage of representative plaintiffs in each set. The *Colonial* and *Alley's* plaintiffs did not share the same counsel, the same legal theories of liability, or the same discovery strategy, all of which weigh against imposing joint and several liability. *See Concord*, 309 F.3d at 497. In addition, the *Colonial* plaintiffs have submitted exhibits demonstrating which witnesses are attributable to the *Colonial* claims, the *Alley's* claims, or both. *See Colonial* Mot. for Review, Exs. This more detailed division, which is unchallenged, supports apportionment. This division of legal theories and witnesses is also reflected in the cost sharing agreement between the parties that allocates 21% of costs to *Colonial*. *Id.* at 35. Accordingly, the court will exercise its discretion to apportion costs based on the share of representative plaintiffs from each case—22% to the *Colonial* plaintiffs and 78% to the *Alley's* plaintiffs.

IV.    **CONCLUSION**

For the foregoing reasons, the plaintiffs' motions for review, ECF Nos. 554, 555, are **GRANTED IN PART** and **DENIED IN PART**. The court disallows $17,319.81 of the costs previously taxed by the Clerk. All other costs were properly taxed by the Clerk. Accordingly, the court taxes costs in favor of the government and against the representative Chrysler plaintiffs as follows.

Fees for Hearing and Trial Transcripts..............................................................$29,705.17
Total Fees and Costs for Witnesses...................................................................$8,887.54
Costs for Duplication........................................................................................$36,221.42
Costs for Deposition Transcripts .....................................................................$53,485.40

Total Costs Taxed ............................................................................................$128,299.53

The court apportions 22% of these costs to the *Colonial* representative plaintiffs, or

$28,225.90, and 78% to the *Alley's* representative plaintiffs, or $100,073.63.

Finally, the court **ORDERS** that the parties file a joint status report by **August 5,**

**2022** proposing further proceedings for the remaining Chrysler plaintiffs.  *See* Scheduling

Order at 2, ECF No. 531.

      **IT IS SO ORDERED.**

                                      s/Nancy B. Firestone
                                      NANCY B. FIRESTONE
                                      Senior Judge